BOND *v*. ANN ARBOR SCHOOL DISTRICT

1. CONSTITUTIONAL LAW—SCHOOLS AND SCHOOL DISTRICTS—FREE PUBLIC SCHOOLS—WORDS AND PHRASES.

> The Michigan constitutional provision that the legislature shall maintain and support a system of free public elementary and secondary schools clearly means *without cost or charge* and must have been so commonly understood by the people who adopted it; the meaning of the word "free" is plain and it is not necessary to resort to extrinsic evidence to determine its meaning (Const 1963, art 8, § 2).

2. SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL LAW—TEXTBOOKS AND SUPPLIES—FREE PUBLIC SCHOOLS.

> Textbooks and school supplies are an essential part of a system of free public elementary and secondary schools under a constitutional provision that the legislature shall maintain and support such a system as being either *necessary elements of any school's activity* or an integral, fundamental part of elementary and secondary education (Const 1963, art 8, § 2).

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur, Schools § 7.
[2] 47 Am Jur, Schools § 205.
[3–5, 7] 47 Am Jur, Schools § 104 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error § 1009.

3. ACTION—CLASS ACTION—RECOVERY OF FUNDS—EXPENSES—FUNDS USED.

It is in the very nature of a class action that the claim of each individual member of the class may be such as to alone scarcely warrant pursuit of repayment and the fact that the funds to be recovered are small for each member of the class, or that expense may be entailed in making a refund, or that the funds have been used by the defendant, ought not to bar recovery and, in such an action, the fruits thereof should not be denied to the class unless the reasons for denial are most cogent.

4. ACTION—CLASS ACTION—RECOVERY OF FUNDS—COMMON QUESTION OF LAW—LEGAL CLARIFICATION.

An action by parents of children attending the elementary and secondary schools of a school district to recover fees unlawfully collected for books and school supplies is one peculiarly adapted to a class suit because the claim of each member of the class alone did not warrant an action, all members were affected in like manner by the collection of fees, and the issue was one that demanded legal clarification.

5. SCHOOLS AND SCHOOL DISTRICTS—CLASS ACTION—RELIEF—GOOD FAITH.

A school district did not make such a showing of good faith as to warrant refusal of relief in a class action by parents of students attending the elementary and secondary schools in that school district where the Attorney General had rendered an opinion two years prior to the commencement of the action ruling that the constitutional provision for free public elementary and secondary schools bars boards of education from imposing registration fees as a condition to registration of pupils in such schools; the parents of the students had sought an injunction, which was denied, and made continued effort to prevent the collection of fees during the two years the suit was in progress through the trial court.

6. ACTION—CLASS ACTION—ATTORNEY FEES—PUBLIC INTEREST— COSTS OF LITIGATION.

Providing a fund from which reasonable attorney fees can be paid to attorneys for the parents of students in the elementary and secondary schools of a school district in which they sought recovery in a class action of fees unlawfully collected is one of the reasons for requiring a refund of the fees where the parties are arrayed in a lawsuit in which both sides undoubtedly conceive themselves to be proceeding in the public interest, as

some balance must be struck so that the side prevailing is not compelled to bear the burdensome costs of achieving a favorable decision.

7. JUDGMENT—CLASS ACTION—ATTORNEY FEES—COSTS—REMAINDER OF JUDGMENT.

A school district which unlawfully charged fees to parents of students attending the elementary and secondary schools of that district shall have a judgment entered against it for the amount of such fees plus interest from the date of their collection from which shall be deducted the fees of the plaintiffs' attorneys and other nontaxable costs in connection with distribution of the money and the trial court shall then determine the ratio which the remainder of the judgment bears to the total judgment which shall be used to determine the proportion of refund to be paid to each individual member of the class of general fees paid by that member to the school district and any funds still outstanding, after the payment of such claims, shall be returned to the school district.

Appeal from Court of Appeals, Division 2, Lesinski, P. J., and Quinn and Danhof, JJ., affirming Washtenaw, William F. Ager, Jr., J. Submitted June 3, 1970. (Calendar No. 5, Docket No. 52,567.) Decided July 17, 1970.

18 Mich App 506, affirmed in part and reversed in part.

Complaint by Lillian Bond and Daniel Fusfeld on behalf of themselves and all parents of children attending the elementary and secondary schools of the defendant school district, against the Ann Arbor School District for a declaratory judgment that the imposition of fees for various school activities and a charge for the purchase of books and school supplies are unconstitutional, for an injunction to prevent further imposition of fees and charges for books, and for a refund of all fees and charges imposed since the action was commenced. Imposition of a general fee declared unconstitutional, but

charges for the purchase of books upheld. Refund
of fees and book purchase money denied. Plaintiffs
appealed to Court of Appeals. Affirmed. The At-
torney General intervened as a plaintiff. Plaintiffs
appeal. Circuit court and Court of Appeals affirmed
in part, reversed in part, and case remanded to cir-
cuit court for further proceedings.

*Douvan, Harrington & Carpenter,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Der-
engoski,* Solicitor General, and *Eugene Krasicky* and
*Gerald F. Young,* Assistant Attorneys General, for
intervenor.

*Roscoe O. Bonisteel, Roscoe O. Bonisteel, Jr.,* and
*Richard B. Bailey,* for defendant.

PER CURIAM.

## I. Statement of Facts.

Plaintiffs sued defendant school district, a munic-
ipal corporation, on their own behalf and on behalf
of all other parents of school children attending the
elementary and secondary schools of defendant.
They designated their action as a class suit and
sought a judgment requiring the district to permit
all qualified children to enroll and attend school
without payment of any fees or the purchase of any
books, supplies, or equipment incident to any por-
tion of the curriculum or other recognized school
activity; an injunctive order restraining defendant
from assessing or collecting any fees and from re-
quiring the purchase of any books, supplies or equip-
ment by children entitled to attend its schools; and
a judgment ordering defendant to refund to the

members of the plaintiff class all sums assessed to and collected from the members or their children as general fees commencing with the fall term of 1966 and continuing for each semester thereafter until the injunctive relief against such fees was granted.

Plaintiffs' demands were based on the provisions of Article 8, § 2, Constitution of 1963.

Plaintiffs conceded in their amended complaint "that no children to the knowledge of the plaintiffs are refused admittance or expelled from the defendant's schools for failure to pay said fees." Plaintiffs claimed, however, that large amounts were illegally collected by defendant from its pupils as general fees, so-called, determined pursuant to a schedule adopted by the board of education of defendant. Student fees were deposited in the general fund of the school district, the same as tax revenues, but were identified by a separate account.

Plaintiffs also challenged the legality of defendant's action in collecting for materials tickets in specialized courses such as photography, art, home economics and industrial arts, and the imposition of interscholastic athletic fees. Defendant explained the materials ticket as a card which the student purchased at the general office. As materials were used, the teacher punched out the amount on the card. Any resulting product was the property of the student.

The trial court adjudged the general fees to be illegal and in violation of Article 8, § 2, Constitution of 1963. By a judgment filed May 10, 1968, it permanently enjoined defendant from assessing or collecting any general fees as then established from the children or their parents for attendance in the elementary and secondary schools of the district. Refund of the general fees collected since commence-

ment of plaintiffs' suit was denied. The trial judge
denied relief from the requirement that children of
the plaintiff class purchase textbooks, miscellaneous
supplies, and equipment, holding that there was no
conflict with the Constitution's requirement of free
education. He found the materials tickets system as
then established to be in violation of the Constitu-
tion and permanently enjoined defendant from re-
quiring any of its students to pay any fees for mate-
rials tickets as a condition of enrollment in any
class offered by defendant. Refund of amounts
expended for materials tickets was denied. The
trial court struck down the interscholastic athletic
fees as unconstitutional and issued a permanent
injunction against further collection. No refund
had been requested and none was allowed.

Plaintiffs appealed those portions of the circuit
judge's decision regarding the purchase of textbooks
and school supplies and the denial of the refund.
Defendant did not file a cross-appeal. The Court
of Appeals affirmed the decision of the lower court
(18 Mich App 506). We granted leave to appeal
(382 Mich 787). Plaintiffs request here a deter-
mination that defendant is without power under our
present Constitution to require that pupils in the
elementary or secondary schools furnish books and
supplies at their own expense; that defendant be
enjoined from requiring or requesting any student
enrolled in any course or recognized school activity
to furnish any textbooks or supplies at his own ex-
pense; and a judgment for the full amount of the
general fees collected, aggregating $140,862, to-
gether with interest, with remand to the circuit
court for administration of the judgment in accord-
ance with this Court's opinion.

*II. The Meaning of the Word "Free" in Article 8,
§ 2, Constitution of 1963.*

Does the word "free," as used in Article 8, § 2, Constitution of 1963, mean free books and supplies. to students in attendance at public elementary and secondary schools? Article 8, § 2, reads as follows:

"The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

Article 11, § 9, Constitution of 1908, provided in pertinent part as follows:

"The legislature shall continue a system of primary schools, whereby every school district in the state shall provide for the education of its pupils without charge for tuition; * * * ."

Because there was no specific discussion at the Constitutional Convention of 1961 of the reasons for the use of the word "free" in Article 8, § 2, Constitution of 1963, the trial judge and the Court of Appeals concluded that there was merit in defendant's contention that to adopt a concept of complete and total subsidizing of pupils would have required persuasion and extended discussion at the convention. Since there was almost no discussion of the provision, those courts concluded that the word "free" did not include textbooks and school supplies.

The first rule a court should follow in ascertaining the meaning of words in a constitution is to give effect to the plain meaning of such words as understood by the people who adopted it. See *People, ex rel. Twitchell*, v. *Blodgett* (1865), 13 Mich 127, 141, 167; *People* v. *Board of State Canvassers* (1949),

323 Mich 523, 528, 529; and *Michigan Farm Bureau* v. *Secretary of State* (1967), 379 Mich 387, 390, 391.

The word "free" is susceptible of various meanings, depending upon the context in which it is used. As the word is used in Article 8, § 2, Constitution of 1963, however, it clearly means without cost or charge and must have been so commonly understood by the people.

Since we hold that the meaning of the word "free" is plain, as used in Article 8, § 2, Constitution of 1963, it is not necessary to resort to extrinsic evidence to determine the meaning of that word.

The question still remains, however, as to whether books and supplies are necessary to a system of free public elementary and secondary schools. In the case of *Paulson* v. *Minidoka County School District No. 331* (1970), 93 Idaho 469 (463 P2d 935), a school district had adopted a fee schedule charging each student $25, with $12.50 being itemized for textbooks and $12.50 being itemized for school activities. Plaintiff refused to pay the fee. Upon his graduation, the school district refused to furnish him a transcript of courses studied and grades achieved. Plaintiff brought suit to compel the school district to furnish him a transcript, claiming that the $25 fee violated Article 9, § 1, of the 1890 Idaho Constitution, which provides:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, *free* common schools." (Emphasis added.)

The Idaho Supreme Court said (pp 938, 939):

"Textbooks are necessary elements of any school's activity. They represent a fixed expense peculiar

to education, the benefits from which inure to every student in equal proportion (ignoring differences in ability and motivation) solely as a function of his being a student. Unlike pencils and paper, the student has no choice in the quality or quantity of textbooks he will use if he is to earn his education. He will use exactly the books, prescribed by the school authorities, that his classmates use; and no voluntary act of his can obviate the need for books nor lessen their expense. School books are, thus, indistinguishable from other fixed educational expense items such as school building maintenance or teachers' salaries. The appellants may not charge students for such items because the common schools are to be 'free' as our constitution requires."

The test adopted by the Idaho Supreme Court— "necessary elements of any school's activity"—is a sound construction of the meaning of the word "free," as used in the Idaho Constitution.

Upon trial of this case, plaintiff class sought to introduce evidence of the importance of textbooks to the educational system of this state by means of the testimony of Robert Trezise of the Michigan Department of Education. The following occurred:

"*The Court:* The court would take judicial notice and I believe we have had testimony that there are textbooks used in the Ann Arbor Public School System. Would this be the extent of his testimony?

"*Mr. Carpenter:* No, his testimony would go further, your Honor. I think the Court would properly take judicial notice that the textbooks are an integral fundamental part of the elementary and secondary education.

"*The Court:* Is there any denial of this, Mr. Bailey?

"*Mr. Bailey:* No.

"*The Court:* I think we could stipulate to it."

In the case of *Crowley* v. *Bressler* (1943), 181 Misc 59, 64 (41 NYS2d 441, 445, 446), the court notes:

"No education of any value is possible without school books."

Applying either the "necessary elements of any school's activity" test or the "integral fundamental part of the elementary and secondary education" test, it is clear that books and school supplies are an essential part of a system of free public elementary and secondary schools.

### III. Refund of Fees Paid Since Commencement of Suit.

The trial court denied repayment of the fees on the ground that plaintiffs' action was not a proper class suit, because of administrative inconvenience and costs to defendant, and because the court found the school district acted in good faith. Plaintiffs have waived claim of refund for all charges or payments except the refund of general fees collected by defendant since the commencement of this suit.

The Court of Appeals found plaintiffs' action to be a proper class suit. The action was treated as a class suit by the trial court. If the class action was properly brought, the fact that the fees to be recovered are small for each member of the class, or that expense may be entailed in making a refund, or that the funds have been used by defendant, ought not to bar recovery. It is in the very nature of a class action that the claim of each individual member of the class may be such as to alone scarcely warrant pursuit of repayment. If an action is successful, the fruits of the action should not be denied to the class unless the reasons for denial are most cogent. We do not perceive here such difficulties as would merit denying recovery. This situation was one peculiarly adapted to a class suit. The claim of each member of the class alone did not warrant an action, all members were affected in like manner

by the action of defendant, and the issue was one that demanded legal clarification.

As bearing on the question of good faith, on October 16, 1964, the Attorney General rendered an opinion (OAG 1963–1964, No 4376, p 484) in which he ruled that Article 8, § 2, Constitution of 1963, providing for free public elementary and secondary schools, bars boards of education from imposing registration fees as a condition to registration of pupils in elementary and secondary schools of the school district and that a board of education may not lawfully charge fees for participation in courses such as band or for participation in athletic programs. This suit was commenced on September 6, 1966. At that time the plaintiff class sought an injunctive order restraining defendant from assessing or collecting any fees. In an effort to prevent the collection of fees for the 1967–1968 school year, on July 28, 1967, plaintiffs obtained an order to show cause why the collection of fees should not be enjoined. The injunction was denied. In the face of the opinion of the Attorney General, of the action of the plaintiff class in instituting this lawsuit, and of their continued effort to prevent the collection of fees during the two years the suit was progressing through the circuit court, we do not find upon this record such a showing of good faith by defendant as warrants refusal of relief.

In *Merrelli* v. *City of St. Clair Shores* (1959), 355 Mich 575, plaintiff sued for a declaratory judgment challenging the validity of fees charged for building permits. This Court held that a city may not defray the general cost of government under the guise of reimbursement for special services required in the regulation and control of new buildings. *Cf. University Custom Homes, Inc.,* v. *Township of Redford* (1959), 355 Mich 606.

Following the decision in *Merrelli*, in *Beachlawn Building Corporation* v. *City of St. Clair Shores* (1963), 370 Mich 128, an action was brought to recover excessive fees paid for building permits under the ordinance that had been declared invalid in *Merrelli*. In holding the payments to have been involuntary, Justice DETHMERS, speaking for a unanimous Court, quoted with approval the following from the early case of *City of Detroit* v. *Martin* (1876), 34 Mich 170 (p 174):

"There is no doubt but that where the parties do not stand upon equal terms, as * * * where the plaintiff was entitled to a license, and the defendant to grant it, but refused to deliver it except upon payment of a sum of money he was not entitled to * * * in all such cases, the party pays under compulsion and may afterwards in an action of assumpsit recover back the amount of the illegal exaction."

See, also, *Beachlawn Building Corporation* v. *City of St. Clair Shores* (1965), 376 Mich 261.

The case of *Theatre Control Corporation* v. *City of Detroit* (1963), 370 Mich 382, involved an annual "demand charge" by the City of Detroit for users of water furnished by the city to parties operating air conditioning equipment which did not recirculate the water. This Court found the charges were arbitrary and unreasonable. It was pointed out that plaintiffs could, from a practical standpoint, pursue no other course but to pay the added charges and await a determination of their rights by final disposition of the case. Plaintiffs were held entitled to a return of the unwarranted charges.

One of the reasons for requiring a refund of the fees in this case is to provide a fund from which can be paid a reasonable attorney fee to the attorneys for plaintiffs. This action has progressed through three courts of this state. Suit was begun

in circuit court on September 6, 1966, and was concluded with judgment filed May 10, 1968. Proceedings in the Court of Appeals ran from May 17, 1968 to August 25, 1969. Proceedings in this Court were begun on August 20, 1969, with application for leave to appeal and conclude with opinion and order of this Court in mid-1970. Plaintiffs' appendix in this Court alone runs to 478 pages.

We are not unmindful of the fact that the fees which were exacted were used by defendant or of the relative smallness of each fee. Nevertheless, where the parties are arrayed in a lawsuit, as here, in which both sides undoubtedly conceive themselves to be proceeding in the public interest, some balance must be struck so that the side prevailing is not compelled to bear the burdensome costs of achieving a favorable decision.

We remand this cause to the circuit court for the entry of a judgment against defendant for the amount of the general fees collected by it in the sum of $140,862, plus interest from date of collection of same, from which there shall be deducted the fees of plaintiffs' attorneys as shall be set forth in itemized statement of same and approved by the circuit judge, costs of notification and distribution to the plaintiff class, and other non-taxable costs. The trial court shall determine the ratio which the remainder of said judgment bears to the total judgment and such ratio shall be used to determine the proportion of refund to be paid to each individual member of the class for general fees paid by that member to the School District during the school years 1966–1967 and 1967–1968. The court shall designate the county clerk, a referee, or defendant, as its officer for the purpose of making refund to the members of the class. The court shall provide for notice by regular mail to each member of the plain-

tiff class advising that the demand of such member, as prorated, will be paid upon claim for payment by the member to the designated officer. In addition to notice by regular mail, the court shall provide for notice once each week for three consecutive weeks in a newspaper of general distribution in Washtenaw County. The court shall provide for a cut-off date for the filing of claims, which date shall be not less than six months from the last date of the giving of notice by regular mail and publication. Following the cut-off date for the filing of claims and the payment of all proper claims, the officer designated by the court shall make report of his doings to the court and the judgment rendered by the court shall be deemed satisfied notwithstanding the fact that the total amount of said judgment may not have been paid out. Any funds then outstanding to satisfy the balance of said judgment shall be returned to defendant.

The circuit court and the Court of Appeals are affirmed in part and reversed in part in accordance with this opinion. The case is remanded to the trial court for further proceedings in accordance with this opinion. Costs to plaintiffs in all courts.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.