## SOBEL v TRONY ASSOCIATES

Docket No. 78-3358. Submitted April 4, 1979, at Lansing.—Decided July 10, 1979.

Curt Sobel, Paul Hees, Roger Weisberg and David Schumer, on behalf of themselves and others similarly situated, brought a spurious class action against Trony Associates seeking a judgment declaring that the rent collection practices of the defendant violated certain provisions of the landlord-tenant relationship act. The plaintiffs also sought an injunction against continuation of the challenged practices and money damages for past violations of the act.

The Washtenaw Circuit Court, Patrick J. Conlin, J., certified the class represented by the named plaintiffs as those tenants of the defendant who had entered into lease agreements with the defendant on or after April 1, 1973. The circuit court found that the defendant had violated the act and awarded the named plaintiffs 5% per annum on $700 for 10 months and 5% per annum on $350 for one month. The named plaintiffs were ordered to notify the other members of the class. The court also ruled that there would be no award of costs as the claimants were represented by a legal aid society. The plaintiffs appeal, challenging the trial court's interpretation of the statutes in question and the court's computation of damages thereon, the denial of taxation of costs against defendant and the order directing the plaintiffs to bear the cost of notifying the absent class members. *Held:*

1. The trial court properly held that except for the first month's rent the defendant could not require any tenant to pay any portion of rent prior to the first day of the rental period to which the rent was to be applied, unless the prepayment was a security deposit which satisfied the act.

2. The lower court was correct in finding that the defendant had required advance payments in excess of those allowed by the act.

3. The act clearly provides that a security deposit may equal

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 49 Am Jur 2d, Landlord and Tenant §§ 651-653.

Right of lessor to retain advance rental payments made under lease terms upon lessee's default in rent. 27 ALR2d 656.

[3] 20 Am Jur 2d, Costs § 87.

[4] 20 Am Jur 2d, Costs §§ 85, 86.

1-1/2 month's rent. The lower court was in error in ruling that a security deposit could not exceed 1 month's rent.

4. The defendant could require, under the terms of the leases, payment of 1-1/2 month's rent as a security deposit and payment of the first month's rent prior to the beginning of the term of the lease and, thereafter, on the first day of any rental period, payment of the rent for that rental period. Any amounts required to be paid, and actually paid, to the defendant under the terms of the lease which exceeded the above amounts were held by the defendant in violation of the act.

5. The trial court's ruling that the plaintiff's damages equaled the value of the use of their money for any period during which the defendant illegally held that money as an excessive security deposit was not in error; nor was the trial court's ruling that the value of that use was 5% per annum.

6. The trial court's denial of taxable costs was unreasonable.

7. The trial court was correct in ruling that the named plaintiffs should notify the members of the plaintiff class of the judgment against the defendant and that, after notification the members were to present their claims in district court. However, it was improper for the trial court to require the plaintiffs to bear the cost of notification. The normal practice would be to require the defendant to pay into court an amount sufficient to satisfy all possible claims and from this fund deduct the costs of notification and distribution to absent class members, reasonable attorney fees and other nontaxable costs, with the claims of the absent class members who file to be paid out of the remainder. However, because of the likelihood, in this case, that many of the possible claims in this class action will never be filed, it would be unreasonable to order the defendant to pay into court a fund which would be sufficient to satisfy all possible claims. In the alternative the defendant is ordered to pay the actual costs of notification together with such reasonable attorney fees for plaintiffs' counsel as may be determined by the circuit court.

Affirmed as modified and remanded for further proceedings.

1. LANDLORD AND TENANT — RENTAL AGREEMENT — SECURITY DEPOSITS — ADVANCE RENTAL PAYMENTS — LANDLORD-TENANT RELATIONSHIP ACT.

A landlord may legally hold, during the term of a rental agreement, an amount equal to 1 1/2 times the monthly rent as a security deposit; in addition, the landlord may require payment of the first month's rent prior to the beginning of the term of the lease and require, on the first day of each rental period thereafter, payment of the rent for that rental period; any amounts which the landlord requires the tenant to pay and which are actually paid in excess of the foregoing amounts are in violation of the landlord-tenant relationship act (MCL 554.601 *et seq.;* MSA 26.1138[1] *et seq.*).

2. Landlord and Tenant — Security Deposits — Excess Security Deposits — Damages.

A trial court's finding that a plaintiff's damages in an action for damages against the plaintiff's landlord for requiring payment of a security deposit in excess of that allowed by statute equaled the value of the use of plaintiff's money held as an excessive security deposit was proper.

3. Costs — Circuit Court — Prevailing Party — Legal Aid Society — Court Rules.

The general rule is that costs are awarded in circuit court to the prevailing party; no statute or court rule prohibits an award of costs to a party represented by a legal aid society (GCR 1963, 526.1).

4. Action — Class Actions — Spurious Class Actions — Notice to Absent Members — Cost of Notice.

A common practice in spurious class actions where the plaintiff class prevails is to order a defendant to compute from its own records the total amount refundable to all possible participants in the plaintiff class and to pay that amount into court for the establishment of a fund from which such claims as may subsequently be proven can be paid; from this fund are first deducted the costs of notification of and distribution to absent class members, reasonable attorney fees and other nontaxable costs; the claims of absent class members who file and prove their claims are paid out of the remainder; however, in a situation where the likelihood is that many of the possible claims in a class action will never be filed, it would be unreasonable to order the defendant to pay into court an amount which would be sufficient to satisfy all possible claims; an alternative is to order the defendant to pay the actual costs of notification of the absent members of the class together with such reasonable attorney fees for plaintiffs' counsel as may be determined by the circuit court.

Washtenaw County Legal Aid Society (by *Roger Chard),* for plaintiffs.

Before: R. M. Maher, P.J., and M. J. Kelly and D. F. Walsh, JJ.

D. F. Walsh, J. Plaintiffs initiated this class action on May 10, 1974, seeking a declaration from the Washtenaw County Circuit Court that the rent collection practices of defendant violated the Michigan landlord-tenant relationship act, MCL 554.601 *et seq.,* MSA 26.1138(1) *et seq.* Plaintiffs also sought an

injunction against continuation of the challenged practices and money damages for past violations of the act.

The circuit court certified the class represented by plaintiffs as those tenants of defendant who had entered into leases with defendant on or after April 1, 1973. The court found that defendant had violated the act and awarded the named plaintiffs 5% per annum on $700 for 10 months and 5% per annum on $350 for one month. The named plaintiffs were ordered to notify the other members of the class. With respect to costs, the court ruled: "There will be no costs allowed as all claimants are represented by Legal Aid."

Plaintiffs appeal, challenging the trial court's interpretation of the landlord-tenant relationship act and the court's computation of damages based thereon, the denial of taxation of costs against defendant, and the order directing plaintiffs to bear the cost of notifying the absent class members.

The admitted practice of defendant was to require, prior to occupancy by the tenants, payment of a security deposit equal to one month's rent. Also required, prior to occupancy, was payment of rent for the first two months of the rental term. Thereafter, one month's rent was required to be paid on the fifteenth day of each month, beginning with the initial month of occupancy. Each of these payments represented the rental payment for the month beginning approximately 45 days after the payment.[1]

The trial court properly held, and ordered in granting partial summary judgment for plaintiffs on February 18, 1976, that, except for the first month's rent, defendant landlord cannot require any tenant to pay any portion of rent prior to the first day of the rental

[1] As noted in the trial court's opinion, defendant has changed its rental collection practices to comply with the landlord-tenant relationship act. The only issue before the trial court, therefore, was calculation of the amount of damages, if any, due plaintiffs for defendant's past practices.

period to which the rent is to be applied, unless the prepayment is a security deposit which satisfies the landlord-tenant relationship act. MCL 554.601(e); MSA 26.1138(1)(e), MCL 554.602; MSA 26.1138(2).[2]

The lower court also properly found that defendant had required advance payments in excess of those allowed by the landlord-tenant relationship act. MCL 554.601 *et seq.*

The court's computation of the amount of excess payment required by defendant, however, was incorrect. The court erroneously ruled that "a landlord cannot charge more than one months *[sic]* rent as a security deposit". The statute clearly provides that a security deposit may equal 1-1/2 month's rent. MCL 554.602. The statute also clearly includes within the definition of security deposit any prepayment of rent (other than prepayment of rent for the first full rental period).

Hence, defendant could legally hold, during the term of the rental agreement, an amount equal to 1-1/2 times the monthly rent. In addition, defendant could properly require, prior to the beginning of the term of the lease, payment of the first month's rent. Thereafter, on the first day of each rental period, defendant could require payment of the rent for that rental period.

Any amounts required to be paid, and actually

---

[2] "(e) 'Security deposit' means a deposit, in any amount, paid by the tenant to the landlord or his agent to be held for the term of the rental agreement, or any part thereof, and includes any required prepayment of rent other than the first full rental period of the lease agreement; any sum required to be paid as rent in any rental period in excess of the average rent for the term; and any other amount of money or property returnable to the tenant on condition of return of the rental unit by the tenant in condition as required by the rental agreement. Security deposit does not include an amount paid for an option to purchase, pursuant to a lease with option to purchase, unless it is shown the intent was to evade this act." MCL 554.601(e).

"A landlord may require a security deposit for each rental unit. A security deposit shall be required and maintained in accordance with the terms of this act and shall not exceed 1-1/2 months' rent." MCL 554.602.

paid, to defendant under the terms of the lease which exceeded the amounts described in the foregoing paragraph were held by defendant in violation of the landlord-tenant relationship act.

The trial court found that plaintiffs' damages equaled the value of the use of their money for any period during which defendant illegally held that money as an excessive security deposit. We find no error in that finding. Nor do we find error in the court's determination that the value of that use was 5% per annum.

To justify recovery, therefore, each of defendant's tenants must prove the terms of his, her or their lease agreement with defendant and the date and amount of each payment made to the defendant under the lease. From these facts it will be possible to determine the amount each tenant paid to the defendant in excess of the amount permitted under the act and the number of days for which each excessive amount was held by the defendant in violation of the act.[3] Damages will equal the amount of any excessive payment times .000137[4] times the number of days the excessive payment was held by the defendant. Computation of total damages will, of course, require a number of separate calculations.[5]

---

[3] Each tenant must establish for the period preceding the initial date of occupancy, the amount paid to the defendant in excess of 2-1/2 times the monthly rental and, for the months following the initial date of occupancy, the amount paid in excess of 1-1/2 times the monthly rental plus one month's rent for each month of occupancy. The tenant must also establish the number of days each excessive amount was held by defendant.

[4] .000137 is the daily rate of interest for an annual rate of 5%.

[5] With respect to the individual named plaintiffs the following chart reveals the proper method of calculation of each one's damages. It must be noted that the calculation is based on an assumption that each payment was made on the day required by the terms of the lease—*i.e.,* the payments due on the 15th of each month were actually paid on the 15th. The record indicates that such ideal conditions did not prevail after August 15, 1973. By their own admission, plaintiffs did not make timely rental payments. In addition, the record indicates that plaintiffs vacated their apartment prior to expiration of the rental term. Reluctantly, we remand to the circuit court for relevant findings of fact. The present record is inadequate for this Court to make proper findings.

The trial court refused to award costs to plaintiffs, the prevailing parties, solely because they were represented by a legal aid society. The general rule is

| Date | Rental Payments Collected By Defendant | | Rental Payments Allowed By Law | | Excess Payments Collected | Number Of Days Excessive Payments Held By Defendant | Damages[*] |
|------|------------|------------|------------|------------|--------|--------|--------|
| | Individual | Cumulative | Individual | Cumulative | | | |
| Aug. 8 | $700 | $  700 | $875 | [**]$  875 | $  0 | -- | $ 0 |
| Aug. 15 | 350 | 1,050 | -- | 875 | 175 | 31 | [***].74 |
| Sept. 15 | 350 | 1,400 | -- | 875 | 525 | 15 | 1.08 |
| Oct. 1 | -- | 1,400 | 350 | 1,225 | 175 | 15 | .36 |
| Oct. 15 | 350 | 1,750 | -- | 1,225 | 525 | 16 | 1.15 |
| Nov. 1 | -- | 1,750 | 350 | 1,575 | 175 | 15 | .36 |
| Nov. 15 | 350 | 2,100 | -- | 1,575 | 525 | 15 | 1.08 |
| Dec. 1 | -- | 2,100 | 350 | 1,925 | 175 | 15 | .36 |
| Dec. 15 | 350 | 2,450 | -- | 1,925 | 525 | 16 | 1.15 |
| Jan. 1 | -- | 2,450 | 350 | 2,275 | 175 | 15 | .36 |
| Jan. 15 | 350 | 2,800 | -- | 2,275 | 525 | 16 | 1.15 |
| Feb. 1 | -- | 2,800 | 350 | 2,625 | 175 | 15 | .36 |
| Feb. 15 | 350 | 3,150 | -- | 2,625 | 525 | 13 | .94 |
| Mar. 1 | -- | 3,150 | 350 | 2,975 | 175 | 15 | .36 |
| Mar. 15 | 350 | 3,500 | -- | 2,975 | 525 | 16 | 1.15 |
| Apr. 1 | -- | 3,500 | 350 | 3,325 | 175 | 15 | .36 |
| Apr. 15 | 350 | 3,850 | -- | 3,325 | 525 | 15 | 1.08 |
| May 1 | -- | 3,850 | 350 | 3,675 | 175 | 15 | .36 |
| May 15 | 350 | 4,200 | -- | 3,675 | 525 | 16 | 1.15 |
| June 1 | -- | 4,200 | 350 | 4,025 | 175 | 15 | .36 |
| June 15 | 350 | 4,550 | -- | 4,025 | 525 | 15 | 1.08 |
| July 1 | -- | 4,550 | 350 | 4,375 | 175 | 15 | .36 |
| July 15 | -- | 4,550 | -- | 4,375 | 175 | 16 | .38 |
| Aug. 1 | -- | 4,550 | 350 | 4,725 | 0 | | |
| Aug. 15 | -- | 4,550 | -- | 4,725 | 0 | | |

|  |  |
|---|---|
| Total Damages  = | $15.73 |
| [****]Damages Per Plaintiff  = | $ 3.93 |

[*]Damages — Value of use of excess payment at 5% per annum (.000137 per day) for number of days held (excess x .000137 x number of days).

[**]Security Deposit ($350 x 1 1/2 = $525) + first months rent prepaid ($350) = $ 875.

[***]From August 15 until September 15, a period of 31 days, defendant held $175 of plaintiff's money in excess of the amount allowed by law.  Damages are $175 x .000137 x 31 = $.74.

[****]There were four named plaintiffs.  The sum of the amounts listed as damages has, therefore, been divided by four.

that costs are awarded in circuit court to the prevailing party. GCR 1963, 526.1, *Barnett v International Tennis Corp,* 80 Mich App 396, 414; 263 NW2d 908 (1978). We find the trial court's denial of taxable costs in this case unreasonable. No statute or court rule prohibits award of costs to parties represented by a legal aid society. Nor do we find any rational basis for such denial.

Finally, plaintiffs challenge the lower court's order that they bear the burden and cost of notifying the absent class members.[6] The circuit court ordered that members of the plaintiff class, after being notified of the judgment entered against defendant, are to present their claims in district court. We find no error in this aspect of the court's order.[7] Notification shall be sufficient if made by first class mail to the most recent address which can be obtained for each missing class member. In district court, defendant shall be allowed to present any counterclaims against those who file claims for refund of excessive security deposits.

We disagree, however, that plaintiffs should be required to bear the cost of notification. A common practice in class actions of this type is to order the defendant to compute from its own records the total

---

[6] In response to interrogatories submitted by plaintiffs, defendant supplied them with a list of the names and addresses of 173 tenants (or groups of tenants) of defendant since April 1, 1973, the effective date of the landlord-tenant relationship act.

[7] In *Grigg v Michigan National Bank,* 405 Mich 148; 274 NW2d 752 (1979), the Supreme Court held that costs of prejudgment notification in "spurious" class actions, which notification is not mandatory, must be borne by the plaintiff. *Id.* at 180, 193. The Court also noted that reasonable attorneys' fees, plus costs, would be payable from the proceeds of judgment prior to computation for distribution. *Id.* at 192. In an addendum signed by herself, Justice COLEMAN suggested that, in "spurious" class actions, class members not named as plaintiffs should not be allowed to intervene *after* a judgment on the merits.

We are dealing in this case not with prejudgment but with post-judgment notice. Because no prejudgment notice was ordered and because the issue of opting in after judgment has not been resolved, we find no error in the procedure followed in this case. We further note that the propriety of allowing post-judgment intervention has not been challenged in the instant case.

amount refundable to all possible participants in the plaintiff class and to pay that amount into court for the establishment of a fund from which such claims as may subsequently be proven can be paid. From this fund are first deducted the costs of notification of and distribution to absent class members, reasonable attorney fees, and other nontaxable costs. The claims of absent class members who file in the appropriate forum are paid out of the remainder. See *Bond v Ann Arbor School Dist,* 383 Mich 693, 705-706; 178 NW2d 484 (1970).

In the instant case, however, there has been a delay of more than six years since the effective date of the landlord-tenant relationship act. It can be fairly assumed that many of the 173 leases allegedly affected by this class action involved tenants who were part of a generally transient student population and who have undoubtedly long since left the Ann Arbor area. For many tenants, therefore, current addresses will most probably be unavailable.

Because of the likelihood that many of the possible claims in this class action will never be filed, we are persuaded that it would be unreasonable to order defendant to pay into court a fund which would be sufficient to satisfy all possible claims. In the alternative we order the defendant to pay the actual costs of notification of the absent members of the class together with such reasonable attorney fees for plaintiffs' counsel as may be determined by the circuit court.

Affirmed as modified. Remanded for further proceedings consistent with this opinion.

Costs to appellants.