## SUTTON v CADILLAC AREA PUBLIC SCHOOLS

Docket No. 57225. Submitted March 11, 1982, at Lansing.—Decided June 9, 1982.

Barbara Sutton, individually and as next friend of Lois Crowder, Linda Crowder, and Gerri Sutton, brought an action against the Cadillac Area Public Schools and others in Wexford Circuit Court to obtain an order requiring defendants to provide free transportation to and from school for pupils enrolled in the Cadillac Area Public Schools who live more than one-and-one-half miles from their school. The court, William R. Peterson, J., granted defendants' motions for summary and accelerated judgment on the ground that plaintiffs failed to state a claim upon which relief could be granted. Plaintiffs appeal. *Held:*

1. Failure to provide free transportation to school does not amount to a denial of free public education because transportation to and from school is not an essential part of a system of free public education.

2. Since education is not a fundamental right and wealth discrimination alone is not an adequate basis for invoking the "strict scrutiny-compelling state interest" test appropriate in reviewing legislative judgments that interfere with fundamental constitutional rights or that involve suspect classifications, the correct test to be applied in this case is the rational basis test. Allocation of a school district's limited funds to education-related matters other than transportation is not irrational.

3. Provision of transportation by the school district is permissive, not mandatory, under the applicable statutes.

4. No implied contract to provide transportation was created by the fact that Cadillac Area Public Schools annexed three

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 22.
[2, 4, 6] 16A Am Jur 2d, Constitutional Law §§ 750, 751.
[3] 16 Am Jur 2d, Constitutional Law § 6, 7.
[5, 7] 16 Am Jur 2d, Constitutional Law § 735 *et seq.*
[8] 16A Am Jur 2d, Constitutional Law § 788.
[9] 73 Am Jur 2d, Statutes, § 257.
[10, 11] 17 Am Jur 2d, Contracts § 3, 4.

neighboring school districts with the approval of the voters at a time when transportation was being provided.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION — "MAY".

The word "may" in a statute is construed as being permissive in nature rather than mandatory unless a contrary legislative intent appears.

2. CONSTITUTIONAL LAW — FUNDAMENTAL RIGHTS — SUSPECT CLASSIFICATIONS.

The "strict scrutiny-compelling state interest" test is appropriate in reviewing legislative judgments that interfere with fundamental constitutional rights or that involve suspect classifications.

3. CONSTITUTIONAL LAW — FUNDAMENTAL RIGHTS — EDUCATION.

Education is not a fundamental right.

4. CONSTITUTIONAL LAW — LEGISLATIVE JUDGMENTS — WEALTH DISCRIMINATION — STRICT SCRUTINY TEST.

Wealth discrimination alone is not an adequate basis for invoking the strict scrutiny test in reviewing legislative judgments.

5. CONSTITUTIONAL LAW — EQUAL PROTECTION.

The equal protection of laws quaranteed by the state constitution is generally the same as that guaranteed by the federal constitution (US Const, Am XIV; Const 1963, art 1, § 2).

6. CONSTITUTIONAL LAW — EQUAL PROTECTION.

The test of whether a government classification violates the constitutional guarantees of equal protection, absent a fundamental right or a suspect classification, is whether the classification has a rational basis.

7. CONSTITUTIONAL LAW — EQUAL PROTECTION.

Equal protection does not require that government choose between attacking every aspect of a problem or not attacking the problem at all.

8. CONSTITUTIONAL LAW — EQUAL PROTECTION.

Government does not deny equal protection by making the same grant available to persons of varying economic needs.

9. STATUTES — SPECIFIC STATUTES — GENERAL STATUTES.

A specific statute controls over a general statute where the two deal with the same subject.

10. Contracts — Implied in Fact — Mutual Intention.

A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract.

11. Contracts — Implied in Fact — Conduct of Parties.

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.

*Joseph G. Harris, Jr. (Lon H. Romanski,* of counsel), for plaintiff.

*Thrun, Maatsch & Nordberg, P.C. (by Thomas J. Nordberg* and *Patrick B. Mooney),* for defendants.

Before: M. J. KELLY, P.J., and T. M. BURNS and MACKENZIE, JJ.

MACKENZIE, J. Plaintiffs brought this action to obtain an order requiring defendants to provide free transportation to and from school for pupils enrolled in the Cadillac Area Public Schools who live more than one-and-one-half miles from their school. The circuit judge granted defendants' motions for summary and accelerated judgment. Although defendants' motions contain various other arguments, it is apparent from the circuit judge's oral and written opinions that the judge held that plaintiffs had failed to state a claim on which relief could be granted, GCR 1963, 117.2(1). Plaintiffs appeal by right.

In their brief on appeal, defendants suggest that this case has become moot because they resumed transporting students to and from school on September 21, 1981, following passage of a temporary millage increase. Since a claim that this case has become moot depends on facts not of record, we

decline to address it. *Dora v Lesinski,* 351 Mich 579; 88 NW2d 592 (1958).

Plaintiffs argue that failure to provide free transportation to school amounts to a denial of free public education. Plaintiffs rely on the following language from Const 1963, art 8, § 2:

> "The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

The foregoing language was construed in *Bond v Ann Arbor School Dist,* 383 Mich 693, 702; 178 NW2d 484 (1970). The Court held:

> "Applying either the 'necessary elements of any school's activity' test or the 'integral fundamental part of the elementary and secondary education' test, it is clear that books and school supplies are an essential part of a system of free public elementary and secondary schools."

We cannot say that transportation to and from school is an essential part of a system of free public education analogous to the books and school supplies at issue in *Bond.* In this connection, see *Bates Twp School Dist v Elliott,* 276 Mich 575; 268 NW 744 (1936), in which the Court held that a statute authorizing a school district "[t]o do all things needful and necessary for the maintenance, prosperity and success of the schools of the district and the promotion of the thorough education of the children thereof" did not authorize the school district to provide free transportation to and from school for its pupils. Moreover, plaintiffs ignore other language of Const 1963, art 8, § 2 inconsis-

tent with their position. The following language was added by amendment in 1970:

"The legislature may provide for the transportation of students to and from any school."

The word "may" is construed as permissive rather than mandatory unless a contrary legislative intent appears. *Smith v School Dist No 6, Fractional, Amber Twp,* 241 Mich 366; 217 NW 15 (1928). No such contrary intent appears here.

Plaintiffs' arguments are based in part on the guarantees of equal protection of laws contained in US Const, Am XIV and Const 1963, art 1, § 2.

Plaintiffs' amended complaint alleges:

"That defendants by not providing the said free transportation of all pupils, are causing the question of whether each pupil is provided with an *opportunity* for an education to be determined by and dependent upon the test of whether a pupil's family (or guardian) is of a sufficient financial status as to afford adequate transportation facilities which can be employed for transporting that pupil to and from that pupil's home and school and, as such, the test is inherently unjustifiably discriminatory since it would result in only those pupils who have families or guardians of sufficient financial status being afforded an opportunity for an education. On information and belief, it is believed that classification on basis of wealth is considered 'suspect' especially when applied to fundamental interests."

Plaintiffs argue for application of the "strict scrutiny-compelling state interest" test appropriate in reviewing legislative judgments that interfere with fundamental constitutional rights or that involve suspect classifications. However, in *San Antonio Independent School Dist v Rodriguez,* 411 US 1, 29-37; 93 S Ct 1278; 36 L Ed 2d 16 (1973),

the Court rejected application of such a test in a case analogous to that presented here, holding that education is not a fundamental right and that wealth discrimination alone is not an adequate basis for invoking strict scrutiny. Generally, the equal protection of laws guaranteed by the state constitution is the same as that guaranteed by the federal constitution. *Moore v Spangler,* 401 Mich 360, 370; 258 NW2d 34 (1977). Plaintiffs' reliance on *Governor v State Treasurer,* 389 Mich 1; 203 NW2d 457 (1972), is misplaced; that decision was vacated after the decision in *Rodriguez, supra.* 390 Mich 389; 212 NW2d 711 (1973).

Absent a fundamental right or a suspect classification, the test of whether a government classification violates the constitutional guarantees of equal protection is whether the classification has a rational basis. *Rodriguez, supra,* 40. Plaintiffs' complaint states that defendants stopped transporting students to and from school after voters rejected a millage proposal designed to generate funds for, among other things, such transportation. Allocation of a school district's limited funds to education-related matters other than transportation is not irrational. Equal protection does not require that government choose between attacking every aspect of a problem or not attacking the problem at all. *Dandridge v Williams,* 397 US 471, 486-487; 90 S Ct 1153; 25 L Ed 2d 491 (1970). Government does not deny equal protection by making the same grant available to persons of varying economic needs. *Carmichael v Southern Coal & Coke Co,* 301 US 495, 518; 57 S Ct 868; 81 L Ed 1245 (1937). We note, moreover, that plaintiffs did not allege that anyone had actually been denied an opportunity for education through lack of transportation.

Plaintiffs also claim that provision of free transportation is mandated by various statutes. Plaintiffs' complaint states that defendant Cadillac Area Public Schools is a school district of the third class. MCL 380.246(d); MSA 15.4246(d) states that the board of a school district of the third class shall "[p]rovide adequate facilities for transportation within the school district of pupils from and to their homes *if the board deems it advisable."* (Emphasis added.)

The emphasized language clearly indicates that provision of transportation is permissive rather than mandatory. Plaintiffs argue that the board did, in fact, deem provision of transportation advisable because transportation was formerly provided. However, nothing in the statute prevents the board from changing its collective mind. That the board deemed provision of transportation advisable before the millage proposal was rejected did not require the board to deem provision of transportation advisable thereafter.

Plaintiffs would infer a duty on the part of defendants to provide transportation from other statutes such as MCL 380.246(f); MSA 15.4246(f), MCL 30.1281(1)(d); MSA 15.41281(1)(d), MCL 380.1321(1); MSA 15.41321(1), MCL 380.1756; MSA 15.41756, and MCL 388.1618(1); MSA 15.1919(918)(1). When two statutes deal with the same subject, the specific statute rather than the general statute controls. *Imlay Twp Primary School Dist No 5 v State Board of Education,* 359 Mich 478, 485-486; 102 NW2d 720 (1960). Since MCL 380.246(d); MSA 15.4246(d) specifically makes provision of transportation discretionary, we decline to infer that other, more general, statutes have made provision of transportation mandatory.

Finally, plaintiffs argue that an implied contract

to provide transportation was created when, in 1963, Cadillac Area Public Schools annexed three neighboring school districts with the approval of the voters. In *Erickson v Goodell Oil Co, Inc,* 384 Mich 207, 211-212; 180 NW2d 798 (1970), the Court explained how an implied contract is formed:

"A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. *In re Munro's Estate,* 296 Mich 80 [295 NW 567] (1941). A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. *Miller v Stevens,* 224 Mich 626 [195 NW 481] (1923)."

An annexation election does not present "circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract" as to the policies the annexing district will follow in the future.

Affirmed.