The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, AR 71611-8367
Dear Senator Bradford:
I am writing in response to your request for my opinion on the following questions:
 1. Is it a violation of the State Constitution for a public school to require students to purchase a calculator or other equipment or supplies to take a class that is not considered an extra-curricula[r] program?
 2. Is it a violation of the State Constitution for a public school to require parents to purchase supplies for students in kindergarten — any grade level?
3. What does the constitutional mandate of free public schools mean?
In support of your request, you have included a letter from a constituent/educator expressing concern that the poor are burdened by regularly having to buy "a multitude of supplies" for their children, even in districts "with one or two million dollar balances year after year." Your constituent further reports that "[t]here are school districts, probably many, that charge students to take certain classes; that require students to buy calculators; that charge `lab fees.'" In some instances, he suggests, the cost of required calculators exceeds $100, effectively precluding indigent students from enrolling and resulting in classes of "a half dozen students."
RESPONSE
In response to your first question, the Arkansas Code expressly directs that a school must supply a student with a hand-held calculator when needed unless the student elects to use his own. I do not believe it is unconstitutional to require a student to purchase certain other equipment or supplies, although the financial onus of such purchases on any particular student cannot be so great as to deny him equal access to education. With respect to your second question, I believe parents can be required to provide certain basic supplies such as pencils, pens and paper. By statute, the state is required to provide certain other supplies. Your third question eludes a simple answer. Neither Arkansas nor any other state with a constitutional mandate for "free public schools" has ever held that parents cannot be charged with certain incidental expenses of education. The difficulty perhaps consists in determining what expenses are clearly "public," and hence nonchargeable to parents, in the sense of promoting "a general, suitable and efficient system" of education. Beyond declaring that public schools may not charge tuition for regular terms, the Arkansas Supreme Court has not yet found occasion to define the exact scope of "free" public education.
Question 1: Is it a violation of the State Constitution for a publicschool to require students to purchase a calculator or other equipment orsupplies to take a class that is not considered an extra-curricula[r]program?
Your question concerns the scope of Ark. Const. art. XIV, § 1, which provides in pertinent part:
 Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education. . . .
At issue is what is meant by the term "free public schools." Historically, neither school administrators nor any legislature in the country, including those with a constitutional mandate for "free public schools," has ever interpreted this term to mean that citizens must be spared any and all expenses incidental to public school attendance. Seegenerally, Annot., 41 A.L.R.3d 752, at § 6 (1972) (reviewing which "incidental" expenses have been deemed chargeable to parents in various jurisdictions). The Arkansas Supreme Court has on various occasions addressed the constitutional propriety of certain educational charges.See, e.g., Special School District No. 65 of Logan County v. Bangs,144 Ark. 34, 221 S.W. 1060 (1920) (charging tuition in public school offended art, XIV, § 1); Dowell v. School District No. 1, BooneCounty, 220 Ark. 828, 250 S.W. 127 (1952) (unconstitutional to charge a registration fee as a precondition to public school attendance). However, the Court has not yet addressed the issue of charging students for supplies. On various occasions, my predecessors have opined on the constitutional propriety of charging students for educational expenses.See, e.g., attached Ark. Ops. Att'y Gen. Nos. 73-137 (applying Dowell, constitutionally improper to charge students for textbooks); 83-154 (constitutionally impermissible to charge fees for required courses or to require special purchases for courses such as a chemistry class);[1] 90-227 (constitutionally permissible to charge fee for non-credit driver's education class); 91-219 (given that certain number of electives required to graduate, constitutionally suspect to charge fees for elective courses); accord
93-393; 96-104 (constitutional proscription against fees very likely applies to fees collected to defray the costs of detention or alternative learning centers); 98-224 (cost of a school uniform is an "incidental" expense that may properly be charged to a parent). I agree with all of these cases and opinions and must consequently conclude that there is no blanket constitutional proscription against charging students for supplies. However, as discussed below, the breadth of the term "supplies" remains unclear, as does the standard for determining when charging parents will amount to an unconstitutional denial of equal access to education.[2]
In addressing these questions, it should be helpful to review past and current legislation.[3] Over the years, the General Assembly has taken various positions on the issue of what supplies the school districts must provide for students. In Act 169 of 1931, § 152, the legislature declared that all children who could establish indigency must be supplied with textbooks. The philosophy underlying this law appears to have been not that education must be absolutely free, but rather that all students should have equal access to public education. Subsequent legislation regarding access to textbooks and other supplies likewise conditioned the concept of "free public schools." In Initiated Act No. 1 of 1937, the electorate declared that the government must supply free textbooks to all public school students in grades 1 through 8. The legislation did not address who would pay for other instructional materials, and it failed to relieve non-indigent high school students of the burden of purchasing their books. Act 5 of 1973, the High School Free Textbook Act of 1973, required schools to supply students in grades 9 through 12 with free textbooks and "instructional materials" — a term that essentially comprised books, workbooks and films. Among various items expressly excluded from the definition of "instructional materials" were "[o]rdinary classroom supplies such as pencils, writing pens, notebook paper, and typing paper." The Free Textbook Act of 1975, enacted asAct 302 of 1975 and initially codified at A.S.A. § 80-1701 et seq., extended these provisions to students in grades 1 through 12. Finally, the 1975 Act, which is currently codified as A.C.A. § 6-21-401 et seq., was amended by identical Acts 280 and 650 of 1995. Section 2 of the amendments broadened the scope of coverage to include kindergarten, see A.C.A. § 6-21-403(a), and section 1 redefined "instructional materials" as follows:
 As used in this subchapter, unless the context otherwise requires," instructional materials" includes: traditional books and trade books in printed and bound form; activity-oriented programs that may include manipulatives, hand-held calculators, or other hands-on materials; and technology-based materials that require the use of electronic equipment in order to be used in the learning process. Technology-based materials do not include the equipment required to make use of these materials.
A.C.A. § 6-21-402 (emphasis added).
This most recent legislation, like any, is presumed to be constitutional until it is challenged and stricken down by a court. Ford v. Keith,338 Ark. 487, S.W.2d (1999). In including "hand-held calculators" within its definition of "instructional materials," the statute just quoted answers part of your question: a public school must make available a free "hand-held" calculator to any student who wishes to use one in "all subjects" requiring a calculator. A.C.A. §§ 6-2-402 and -403(a). However, I cannot conclusively opine whether a school constitutionally might — or, perhaps, must — provide what you term "other equipment or supplies" beyond those described in A.C.A. § 6-21-402.[4] This unresolved question of constitutional interpretation is most appropriately addressed not by this executive office, but rather by the judiciary in response to a particular challenge.
Question 2: Is it a violation of the State Constitution for a publicschool to require parents to purchase supplies for students inkindergarten — any grade level?
As suggested in my response to your previous question, answering this question may be impossible without considering precisely what "school supplies" are at issue. As previously noted, I have not found a single case in any jurisdiction declaring that a school district must supply students with all items normally thought of as "school supplies." To be sure, in a case cited with approval in Ark. Op. Att'y Gen. No. 90-227, one court declared that "books and school supplies are an essential part of a system of free public elementary and secondary schools." Bond v.Public Schools of Ann Arbor School District, 383 Mich. 693,178 N.W.2d 484, 488, 41 A.L.R.3d 742 (Mich. 1970). However, the court prefaced this pronouncement by significantly narrowing what might qualify as "school supplies" within the context of "free" public education:
 "Textbooks are necessary elements of any school's activity. They represent a fixed expense peculiar to education, the benefits from which inure to every student in equal proportion (ignoring differences in ability and motivation) solely as a function of his being a student. Unlike pencils and paper, the student has no choice in the quality or quantity of textbooks he will use if he is to earn his education. He will use exactly the books, prescribed by the school authorities, that his classmates use; and no voluntary act of his can obviate the need for books nor lessen their expense. School books are, thus, indistinguishable from other fixed educational expense items such as school building maintenance or teachers' salaries. The appellants may not charge students for such items because the common schools are to be `free' as our constitution requires."
Id. at 487, quoting Paulson v. Minidoka County School District No. 331,463 P.2d 935, 938-39 (Idaho 1970). This passage strongly suggests that a certain category of "school supplies" — namely, those that are individually selected and uniquely "consumed" by individual students, such as paper, pencils and workbooks — fall outside the category of "school supplies" that must be provided for free. This is precisely the conclusion reached by the Supreme Court of Wisconsin in Board ofEducation v. Sinclair, 222 N.W.2d 143, 148 (Wis. 1974): "We have stated that pencils, pens, notebooks and paper customarily furnished by pupils for their own use in pursuing a course are not within the `free' provisions of sec. 3, Art. X, of our constitution." This distinction is in accord with what seems the universal historical practice of charging parents with the obligation to provide certain incidental supplies.
To summarize, I cannot answer your question with a definitive yes or no, beyond opining that it is constitutionally permissible to charge parents with the cost of certain supplies but forbidden by statute to compel a student to supply his own hand-held calculator. Unfortunately, it is difficult to say more than that the legislature has historically acknowledged that certain types of supplies, including but not necessarily limited to pens, pencils and paper, need not be provided by school districts. It remains for the courts to determine on a case-by-case basis whether the constitution requires that the state provide supplies in addition to those listed in A.C.A. § 6-21-402.
Question 3: What does the constitutional mandate of free public schoolsmean?
As discussed in my response to your previous questions, the constitutional mandate clearly prohibits charging parents fees or tuition for their children's education. However certain charges for certain types of supplies are clearly permissible. I can only opine that the state cannot impose on parents fees and costs that have the practical effect of denying their children equal access to education. See Dupree, supra. As has been the case in other jurisdictions, the Supreme Court may find occasion in the future to articulate a standard that school administrators can apply in determining what expenses to charge to parents.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures
[1] The Exhibit attached to Opinion No. 83-154 is highly instructive in summarizing the range of interpretations the courts in various states have attached to constitutional provisions mandating "free" public education. See also Cardiff v. Bismarck Public School District,263 N.W.2d 105 (N. Dak. 1978) (exhaustively cataloging the constitutional standards and their applications in various states).
[2] The requirement of equal access is frequently expressed in cases dealing with school financing. For example, in the course of striking one school funding system as unconstitutional, the Supreme Court offered the following gloss to art. XIV, § 1:
[E]ven without deciding whether the right to a public education is fundamental, we can find no constitutional basis for the present system, as it has no rational bearing on the educational needs of the district.
 We come to this conclusion in part because we believe the right to equal educational opportunity is basic to our society. "It is the very essence and foundation of a civilized culture; it is the cohesive element that binds the fabric of our society together." Horton [v. Meskill, 376 A.2d 359 (Conn. 1976)] at 377, Bogdanski, J.[,] conc. Education becomes the essential prerequisite that allows our citizens to be able to appreciate, claim and effectively realize their established rights.
Dupree v. Alma School District No. 30, 279 Ark. 340, 346, 651 S.W.2d 90
(1983).
[3] As the Supreme Court noted in Mears, County Judge v. Hall,263 Ark. 827, 835, 569 S.W.2d 91 (1978): "Legislative interpretation of constitutional provisions is never binding on the courts, but, if there is any doubt or ambiguity, it is persuasive and entitled to some consideration."
[4] I consider the statute confusing in describing the supplies it dictates must be provided. I am unclear, for instance, what is meant by the statutory terms "activity-oriented programs that may include manipulatives" and "other hand-held materials."