STATE OF NORTH DAKOTA. EX REL. HENRY J. LINDE, Attorney General, Relator, v. JAMES E. ROBINSON, R. H. Grace, L. E. Birdzell, Chas. J. Fisk, E. B. Goss, and E. T. Burke.

(160 N. W. 514.)

**Members of supreme court — district judges — when called by — acts — powers — same as though elected and acting justices.**

  1. District judges, when called by members of the supreme court, upon reporting for duty, are clothed by the Constitution with all the powers of justices of the supreme court, to the same extent as though they had been regularly elected and qualified to fill such positions.

  35 N. D.—27.

**Canons — interpretation — construction — Constitution.**

2. Certain well-known canons of interpretation and construction of the Con-. stitution announced and followed.

**Territorial enactments — brought forward — laws of state — become such — constitution — adoption of — state officers — terms of — commencement of — supreme court — judges — those first elected.**

3. Territorial enactments were by the Constitution carried forward and became the law of the state of North Dakota. The Constitution was adopted in view of a general statute of the territory, § 10, chapter 9, of the Code of 1877, which, by its terms, fixed the date of the commencement of the terms of all state officers upon the first Monday in January, succeeding their election.

**Constitution — tenure of office — reference to — supreme court judges — only to those first elected.**

4. The reference in § 92 of the Constitution to the tenure of office of the judges. of the supreme court and their holding such offices from the first Monday in December, 1889, had reference wholly to the three judges first elected.

**State officers — supreme court — judges are — terms of office — commencement of.**

5. Judges of the supreme court are state officers, and all the members thereof, save the first three, begin their terms of office on the first Monday in January following their election under § 678, Compiled Laws, 1913.

**Constitution — construction of — supreme court — judges of — usage — unquestioned — long period of time — practical construction.**

6. The construction of the Constitution as here declared, while never announced in a contested case, has for twenty-four years been followed by the judges of the supreme court in entering upon the discharge of the duties of their respective offices. This uniform rule of action, acquiesced in without a single exception for so long a period, constitutes a practical construction of the Constitution, which cannot now be avoided.

**Courts — judicial notice — of the election of state officers — certificate of election — immaterial — officer — administrative — powers of.**

7. The court takes judicial notice of the fact that Judges elect Robinson, Grace, and Birdzell were elected and will be entitled to take their seats on the first Monday in January, 1917. The fact whether or not a certificate of election has been issued to them is therefore immaterial. However, if issued, no administrative officer has power, by giving a certificate to that effect, to cause a term of office to begin prior to the time when so provided by the Constitution.

Opinion filed December 11, 1916.

PER CURIAM:

The above-entitled matter was initiated by an order to show cause issued by the following named persons, constituting the supreme court of the state; *viz.*; Andrew A. Bruce, as Acting Chief Justice, together with Associate Justice A. M. Christianson, and District Judges W. L. Nuessle, James M. Hanley, and Chas. A. Pollock. At the time of the issuing the order to show cause the question of the right of the supreme court, as thus constituted, to sit, was considered, and upon that question an opinion was written, signed, and filed by the five judges above named. State ex rel. Linde v. Robinson, ante, 410, 160 N. W. 512. The order to show cause thus issued, in substance, required all the respondents above named to appear before the supreme court on Thursday, December 7th, 1916, and present their respective claims with reference to their tenure of office of justices of the supreme court, between the first Monday in December, 1916, and the first Monday of January, 1917. Thereafter Justices Bruce and Christianson, entertaining doubts as to the propriety of their further sitting and deciding upon the merits involved in the proceeding, asked to be relieved from acting, whereupon the remaining members of the court as thus constituted, and without any suggestion from Justice Bruce and Christianson, called to complete the complement of the court W. C. Crawford, judge of the district court of the tenth district and K. E. Leighton, judge of the district court of the eighth district. Upon the return day the court last above named assembled, and, with the exception of Judge James M. Hanley, appeared in the court room of said court as constituting a majority of the supreme court of the state of North Dakota then organized and ready to conduct the business of the same. There were also present John P. French, the marshal of said court, and R. D. Hoskins, the clerk thereof. Court was opened in due form. Upon this matter being called for hearing, Messrs. W. C. Lemke and William Langer appeared specially, as counsel for Messrs. Robinson, Grace, and Birdzell, whom for convenience hereafter in this opinion we will designate as judges elect; James E. Robinson and R. H. Grace appearing also in person; L. E. Birdzell not appearing. The attorney general, H. J. Linde, appeared for the plaintiff, stating the reasons why he had brought the action; and Judges Fisk, Goss, and Burke appeared generally, each for himself respectively, making no objection to the juris-

diction of the court as constituted, each filing his return to the writ and claiming, in substance, that his term of office does not expire until the first Monday in January, 1917. Upon the other hand, counsel for the judges elect, appearing specially, moved that the order to show cause be discharged, for the reason that the court as now constituted was not a court and had no jurisdiction in the matter whatsoever. At this juncture the court was compelled to pass upon the question of jurisdiction. Being of the opinion that there is no question whatsoever but that this court, as now constituted, is a regularly organized and existing court under the Constitution, sitting as the supreme tribunal thereof, we conclude, and so hold, that the motion must be denied. This we do independently of the decision heretofore rendered in this same proceeding, and to which reference has been made. State ex rel. Linde v. Robinson, supra. We, however, wish it to be understood that we have carefully considered that decision and unanimously concur therein, save and except as to the reasoning upon which Judge Hanley bases his concurrence. Reference to that opinion will fully answer the jurisdictional questions involved herein, without the necessity of embodying the same in these conclusions. It may be appropriate, however, for us to add that we cannot agree with the contention of the judges elect that there is no tribunal in this state which can settle the questions here in dispute. Carried to its logical conclusion, their contention would bring us into that singularly unfortunate state of confusion where one body of men in office claimed the right to sit, and another, not having possession, asserted the same right. The matter would then have to be determined by purely the right of possession, or a recourse to physical force, where the members of the highest judicial branch of the government must settle the disputed question by the arbitrament of arms. Such a humiliating spectacle in civilized society ought not to exist. Clearly, no such lapse of power could have been contemplated by the people of the state of North Dakota when they adopted our Constitution containing its clear provisions with reference to calling in judges of the district court to sit when the judges of the supreme court were for any reason disqualified. This court, as now constituted, is as much the supreme court of the state of North Dakota, as though the members thereof had been elected to that position by the people themselves, for the simple reason that the people in adopting the Constitution said that

the tribunal as now created should be organized in the form in which it is in cases where the duly elected and acting supreme court judges were disqualified.

Upon the whole record, therefore, the sole and only question remaining for decision is whether the term of office of the judges elect commences on the first Monday in December, 1916, or, the first Monday in January, 1917. This calls for an interpretation of certain sections of our Constitution and a construction of the whole thereof in connection with appropriate legislation made prior and subsequent to the creation of our state, and its admission into the Union. Before taking up a discussion of the several sections of the Constitution, it may be appropriate to refer to certain canons of construction, which are so thoroughly settled as a part of the law of the land that their simple statement will be sufficient to show the elementary character they possess. "The object of construction, as applied to a written Constitution, is *to give effect to the intent of the people in adopting it.* In the case of all written laws it is the intent of the lawgiver that is to be enforced, but this intent is to be found in the instrument itself. . . . The whole instrument to be examined." "Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import, may yet be made plain by comparison with other clauses or portions of the same law. It is, therefore, a very proper rule of construction *that the whole is to be examined* with a view to arriving at the true intention of each part." "The *rule* . . . *is that effect is to be given, if possible, to the whole instrument,* and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make come words idle and nugatory." The purpose to be accomplished by the Constitution or any part of its several parts should be considered and that will shed great light in construing such Constitution. "It is possible, however, that after we have made use of all of the lights which the instrument itself affords, there may still be doubts to clear up and ambiguities to explain." "Among these aids is a contemplation of the object to be accomplished or the mischief designed to be remedied or guarded against by the clause in which the ambiguity is met with. 'When we once know the reason which alone determined the will of the

lawmakers, we ought to interpret and apply the words used in a manner suitable and consonant to that reason and as will be best calculated to effectuate the intent.' "

"The prior state of the law will sometimes furnish the clue to the real meaning of the ambiguous provision, and it is especially important to look into it if the Constitution is the successor to another and in the particular in question essential changes have apparently been made." And finally, as an elementary rule of construction, we note that which is drawn from contemporaneous and practical constructions and "where there has been a practical construction which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist." Upon the question of the duty of the citizen in case of doubt, we find the law to be that "whoever derives power from the Constitution to perform any public function is disloyal to that instrument and grossly derelict in duty if he does that which he is not reasonably satisfied the Constitution permits. Whether the power be legislative, executive, or judicial, there is manifest disregard of constitutional and moral obligation by one who, having taken an oath to observe that instrument, takes part in an action which he cannot say he believes to be no violation of its provisions."

The above quotations are taken from Cooley's Constitutional Limitations, 7th ed. chap. 4, beginning at page 70 and ending at page 123.

Keeping these general rules in mind, and before discussing the various sections of the Constitution involved in this controversy, it should not be forgotten that before statehood the territory of Dakota was fully organized and operating under laws which provided ample machinery for carrying on the government as then existing. The first enactment of the legislature touching this question appears at chap. 73, Laws 1875, page 252. That section, however, was amended by the laws which passed into the Revised Codes of 1877, and the section then enacted is found in chap. 5 of the statutes of that year, page 9, at § 10, which reads as follows: "Except where otherwise especially provided, all territorial, district, county, township and precinct officers shall qualify and enter upon the duties of their office on the first Monday of January succeeding their election, or within ten days thereafter." This section, without any change whatsoever upon the propositions here involved,

continued in force throughout all subsequent legislation, both in the territory and state, down to the present time. It appears at § 1380 of the Compiled Laws of 1887, and therefore was in existence at the time of. the adoption of our Constitution. It thereafter·appeared as § 354, Revised Codes of 1895, and now is found at § 678, Compiled Laws 1913. When the members of the Constitutional Convention met, therefore, and were drafting the several sections with reference to the tenure of offices, they must have done so in contemplation of the several enactments to which reference has just been made. Considering the Constitution as adopted, we find it is made up of what may be called two parts; the Constitution itself, .and the schedule which was adopted for the purpose, as indicated in § 1, "that no inconvenience may arise from a change of territorial government to state government." In § 2 we find the following: "All laws now in force in the territory of Dakota, which are not repugnant to this Constitution, shall remain .in force until they expire by their own limitations or be altered or repealed." An examination of the entire document will disclose the fact that sometimes there was a failure to clearly differentiate between what ought to have found its way into the Constitution itself, or in the schedule. We have such an instance now before us, where a more orderly arrangement would have placed § 92 in the schedule. We quote the following sections of the Constitution and the schedule, which must receive construction in order to settle the matter here in dispute:

"Sec. 89. The supreme court shall consist of three judges, a majority of whom shall be necessary to form a quorum or pronounce a decision, but one or more of said judges may adjourn the court from day to day or to a day certain.

"Sec. 90. The judges of the supreme court shall be elected by the qualified electors of the state at large, and except as may be otherwise provided herein for the first election for judges under this Constitution, said judges shall be elected at general elections.

"Sec. 91. The term of office of the judges of the supreme court, except as in this article otherwise provided, shall be six years, and they shall hold their offices until their successors are duly qualified.

"Sec. 92. The judges of the supreme court shall, immediately after the first election under this Constitution, be classified by lot so that one shall hold his office for the term of three years, one for the term of five

years, and one for the term of seven years from the first Monday in December, A. D. 1889. The lots shall be drawn by the judges, who shall for that purpose assemble at the seat of government, and they shall cause the result thereof to be certified to the secretary of the territory and filed in his office, unless the secretary of state of North Dakota shall have entered upon the duties of his office, in which event said certification shall be filed therein. The judge having the shortest term to serve, not holding his office by election or appointment to fill a vacancy, shall be chief justice and shall preside at all terms of the supreme court and in case of his absence the judge having in like manner the next shortest term to serve shall preside in his stead. . . .

"Sec. 95. Whenever the population of the state of North Dakota shall equal 600,000 the legislative assembly shall have the power to increase the number of the judges of the supreme court to five, in which event a majority of said court, as thus increased, shall constitute a quorum."

Also paragraphs 15 and 16 of the schedule, together with article 10, paragraph 89 of the Amendments to the Constitution, which read as follows:

"Sec. 15. All officers elected at such election shall, within sixty days after the date of the executive proclamation admitting the state of North Dakota into the Union, take the oath required by this Constitution, and give the same bond required by the law of the territory to be given in case of like officers of the territory and districts, and shall thereupon, enter upon the duties of their respective offices; but the legislative assembly may require by law all such officers to give other or further bonds as a condition of their continuance in office.

"Sec. 16. The judges of the district court who shall be elected at the election herein provided for shall hold their offices until the first Monday in January, 1893, and until their successors are elected and qualified. All other state officers, except judges of the supreme court, who shall be elected at the election herein provided for, shall hold their offices until the first Monday in January, 1891, and until their successors are elected and qualified. Until otherwise provided by law, the judges of the supreme court shall receive for their services the salary of four thousand dollars per annum, payable quarterly; and the district

judges shall receive for their services the salary of three thousand dollars per annum, payable quarterly."

Amendment to Constitution, article 10, § 89. "The supreme court shall consist of five judges, a majority of whom shall be necessary to form a quorum or pronounce a decision; but one or more of said judges may adjourn the court from day to day or to a day certain."

Remembering the canon of construction which requires the court to view these sections, as well as the entire Constitution, as a whole, and especially in view of the preceding legislation existing when these several sections were adopted, we are led to conclude that § 92, with reference to the terms of office beginning the first Monday in December, applied only to the first three judges who were elected, and not to their successors or to any other judges elected under the Constitution, either as originally framed or subsequently amended. The debates in the Constitutional Convention, and the several references to the development of these sections above quoted, show clearly the purpose and intent of the instrument as drafted and thereafter adopted. Any other theory would lead us to impossible conclusions, and would violate the plain terms of the Constitution itself as disclosed by § 16 of the schedule. The Enabling Act granting power to organize the state was passed by Congress and approved February 22d, 1889. That act of Congress provided for the organization of the state governments of North and South Dakota. Under its terms a Constitutional Convention began in North Dakota on the 4th day of July, 1889. It completed its work on August 17, 1889. It will be seen by reading the schedule that all territorial laws were to be kept in force and carried forward, and other adjustments with reference to the machinery of government were made. It is apparent that the scheme of government for the state provided for biennial elections to take place on the even years. Under the old territorial law the judges of the district court met three times a year in banc and constituted the supreme court of the territory. That plan of organization necessarily ceased with the outgoing territorial government, and it became necessary that a supreme tribunal, largely appellate in its jurisdiction, and which was to be composed of persons not elected or acting as trial judges, should be provided for and the tenure of office of the judges thereof begin immediately upon the organization of the state or as soon thereafter as possible. It must be apparent also that

the framers of the Constitution felt that to elect judges of the supreme court for only one year would be highly improper, and that the length of the terms of the first justices should be more nearly in harmony with the general provisions of the Constitution, § 91, which provides for a term of six years and until their successors are duly qualified. It should be noted further that, under the provisions of § 90, such elections must be held at the general elections. In order therefore to harmonize these provisions and give the judges first elected a suitable tenure of office § 92, above quoted, provided that "immediately after the first election under this Constitution" the judges thus elected shall "be classified by lot so that one shall hold his office for the term of three years, one for the term of five years, and one for the term of seven years from the first Monday in December, A. D. 1889." And it must not be forgotten at this point also that under the provisions of § 91 they were to hold their offices until their successors were duly qualified, which in itself would care for any possible lapse as between the time when the term of the first judges should cease and that of their successors begin, under the general provisions with reference to the time when state officers should take their office; viz, the first Monday in January after their election at a general election. If there could be any doubt entertained concerning this construction of § 92, that doubt must be set at rest by the plain provisions of § 16 of the schedule, which provides for the time to which district judges shall hold their offices and also all other state officers (and clearly a supreme court judge is a state officer), save and except the first set of supreme judges whose election for three, five, and seven years was provided for by § 92 of the Constitution. This exception shows clearly that § 92 refers wholly to the first three judges elected, and that no provision was made for the tenure of the other supreme court justices in the Constitution, save and except that they should be elected at general elections, to serve six years and until their successors are elected and qualified, thus leaving the question of when the term of office should begin to be determined by the statutes in force from 1877 down to the present time. Any other construction of these several sections would lead us into a state of confusion from which it would be impossible to extricate ourselves. Considering for a moment the claim of the judges elect that they are the successors of these first judges whose terms were fixed to begin on the first Monday of Decem-

ber, 1889, how shall we determine which three of the present supreme bench, composed of five persons, are the successors of the three first named? Clearly this is impossible. It must not be forgotten that under the provisions of art. 10, ratified in 1908, being an amendment to the original Constitution, the supreme court thereafter, under such Amendment, was to consist of five judges. Just prior to the adoption of this amendment the supreme court was then made up of Judges Fisk, Morgan, and Spalding, immediate and remote successors of Judges Corliss, Bartholomew, and Wallin, the first three to be elected. When the bench was reorganized under the new amendment providing for five judges, there were added by appointment Judges Ellsworth and Carmody. The bench as thus made up became a new tribunal in the sense that the body as then composed had five members instead of three, as originally constituted. By appointment Judge Bruce succeeded Judge Morgan, who had recently resigned. At the succeeding election Messrs. Fisk, Goss, and Burke were elected. Who can say which one of these three was a successor to either Judges Corliss, Bartholomew, or Wallin? If the successor idea must prevail, then we find ourselves in a situation where three members of the supreme court hold their offices from the first Monday in December, while the remaining two would hold their terms from the first Monday in January, because it cannot be contended that there is any provision in the Constitution or statutes which state that the term of the two additional justices should begin in December. If we may say that Judge Fisk was the successor of Judge Corliss and that Judges Goss and Burke were the successors of Judges Ellsworth and Carmody, then we find the anomalous condition of one of these justices with his term of office closing in December and the other two closing in January. To follow the matter a little further, how can we determine which one of the three Justices elect, Robinson, Grace, or Birdzell, is the successor of Judge Corliss, and which two are the successors of Judges Ellsworth and Carmody? A simple statement of these propositions shows the absolute impossibility of arriving at any conclusion favorable to the contention of the judges elect in this matter. It would be clearly in opposition to the plain terms of the Constitution and all good reasoning and common sense.

Viewed from another standpoint, we feel constrained to hold, under well-settled rules of construction, that the terms of office of the supreme

judges of this state must begin on the first Monday in January following their election. Ever since statehood this has been the rule followed by all the judges who have sat upon the supreme bench. It is true upon one or two occasions the question has arisen, but in each and every case the incoming judge or judges have acceded to the general idea which prevailed among the members of the supreme court that the term of office begins on the first Monday in January. Here must be invoked the rule that "where there has been a practical construction which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist." Such a matter was presented to the Supreme Court of the United States upon one occasion when the right of the members of the Supreme Court to sit as circuit judges was challenged, there being no specific constitutional authority to that effect, and yet for a long period of time they had so acted. Considering that question in the case of Stuart v. Laird, 1 Cranch, at page 309, 2 L. ed. 118, the court said: "Another reason [urged] for reversal is that the judges of the Supreme Court have no right to sit as circuit judges, not being appointed as such, or, in other words, that they ought to have distinct commissions for that purpose. To this objection, which is of recent date, it is sufficient to observe that practice and acquiescence under it for a period of several years, commencing with the organization of the judicial system, affords an irresistible answer, and has indeed fixed the construction. It is a contemporary interpretation of the most forcible nature. This practical exposition is too strong and obstinate to be shaken or controlled. Of course, the question is at rest, and ought not now to be disturbed." Our own supreme court has adopted the same rule when viewing the construction of various acts of the legislative assembly, and the governors. In the case of State ex rel. Linde v. Packard, ante, L.R.A.1917B, 710, 160 N. W. 150, they say: "The contemporaneous construction placed thereon by the various administrative officers and boards is entitled to great weight and the acquiescence in and approval of such construction by subsequent legislative assemblies, and chief executives ought to dispel all possible doubt as to legislative intent." See also O'Laughlin v. Carlson, 30 N. D. 218, 152 N. W. 675, 8 Cyc. 727, and Barry v. Truax,

13 N. D. 139, 65 L.R.A. 762, 112 Am. St. Rep. 662, 97 N. W. 769, 3 Ann. Cas. 191.

Before passing the question of contemporaneous construction, it is well to remember that the legislature, by their own enactment, have placed a construction upon § 92 of the Constitution adverse to the claims of the judges elect. Section 1915, of the Compiled Laws of 1913 provided for the meeting of the canvassing board on the second Tuesday in December following the election. Both the original law and the amendment provide for such canvass subsequent to the first Monday in December. Section 92 of the Constitution is not self-executing. The legislature has provided no method whereby the judges elect can present prima facie evidence of their right to the office on the first Monday in December. By providing for the meeting of the canvassing board, and necessarily the issuance of certificates of election, at a time subsequent to the first Monday in December, they have placed a construction upon this constitutional provision which we cannot ignore. Such an interpretation expressed by the people through their legislature should and does command the highest consideration and respect. So that if based wholly upon the doctrine of contemporaneous and practical construction, we must hold that since the close of the first term of Judge Corliss's office, which occurred about twenty-four years ago, there has been a uniform and practical construction of those constitutional provisions adverse to the contention of the judges elect in this case. We hold, however, that, even without this last reason indicated, from the plain terms of the whole Constitution, considering all of its parts, in connection with the statute in the light of which these sections were framed and adopted, that the term of office of the several judges of the supreme court as now constituted under the Constitution begins the first Monday in January of the year succeeding their election. In so holding we are not considering whether the judges elect have or have not a certificate of election. We take judicial notice of the fact that they have been elected to succeed the present retiring judges at the end of their term of office. Clearly no administrative officer would have the power, by simply giving a certificate to that effect, to cause a term of office to begin prior to the time when so permitted by the Constitution.

During the course of the argument herein James E. Robinson, one of the judges elect, threatened that, upon taking their seats, the judges

elect would put aside and render nugatory the acts of this court as how constituted, as well as those of the court wherein Judges Fisk, Goss, and Burke have taken part since December 4th. Such an unheard-of proceeding probably never before occurred in a court of justice, and we cannot bring ourselves to believe that the remaining judges elect will support any such revolutionary action. Such threat, however, ought not to deter this tribunal from performing its full duty. Without our seeking, a responsibility of the very gravest character has been thrust upon us. It is with the greatest reluctance that we have undertaken to discharge it. Regardless of possible embarrassment to ourselves, we feel it imperative to prevent, if possible, a recurrence of incidents such as have characterized and made necessary this proceeding, both to maintain the dignity and prestige of this court, and to preserve the welfare and good name of this state.

In the foregoing all concur, excepting Judge James M. Hanley, not sitting.