718

Elizabeth P. SHAFFER, William W. Shaffer, Daniel Everett Brangard, Audra Virginia Engle, Gary N. Cottrell, Susan Rae Moore, minors by their guardians Betty J. Shaffer, Wanda R. Brangard, Pauline V. Layhue, Dolores Cottrell and Diana J. Moore, and in their own right, Appellees,

v.

BOARD OF SCHOOL DIRECTORS OF the ALBERT GALLATIN AREA SCHOOL DISTRICT, Dorsey Clegg, Theodore Yanowsky, Sarah Bartuch, Elroy Enlow, Charles King, John A. Kopas, Jr., George E. Lilley, Theodore C. Shaffer, Frank Sterle (Individually and in their capacity as members of the Board of School Directors of the Albert Gallatin Area School District Fayette County, Pa.), and Michael E. Tippett (Individually and in his capacity as Superintendent of the Albert Gallatin Area School District), Appellants.

No. 81–2880.

United States Court of Appeals, Third Circuit.

Argued June 16, 1982.

Decided Aug. 25, 1982.

Stay Denied Dec. 13, 1982.

See 103 S.Ct. 567.

Michael Patrick Boyle, Steven M. Dranoff (argued), Dranoff & Perlstein Associates, Philadelphia, Pa., Gerald R. Solomon, Uniontown, Pa., for appellants.

Robert M. Brenner, David W. Pickens, Robert J. Wetzel (argued), Southwestern Pennsylvania Legal Aid Society, Inc., Uniontown, Pa., for appellees.

William Fearen, Michael I. Levin (argued), Cleckner & Fearen, Harrisburg, Pa., for amicus curiae Pennsylvania School Bds. Ass'n.

Robert C. Brady, Daniel L. Chunko, Washington, Pa., for amicus curiae American Civ. Liberties Union.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this appeal, we are asked to review the propriety of a decision by the Board of

School Directors of the Albert Gallatin Area School District (hereinafter the Board) to provide free transportation to kindergarten-age children on only a one-way basis either to or from school. The district court entered a permanent injunction against the Board ordering them to provide free transportation both ways (to and from kindergarten) for all eligible children residing in the school district commencing with the 1981–82 school year, and continuing as long as kindergarten education is provided by the school district. Because we have concluded that neither the due process nor the equal protection clauses of the fourteenth amendment to the United States Constitution mandate free round-trip busing, we will reverse the district court's order, 522 F.Supp. 1138, entering a permanent injunction against the Board and the Superintendent. We will, however, remand this case to the district court for its discretionary determination as to whether it is appropriate to decide the merits of this case under state law or to dismiss the state law claims without prejudice.

## I.

The Albert Gallatin Area School District provides kindergarten classes for all eligible children residing within the district. Classes are held during the regular school week at four public elementary schools with a morning and an afternoon session offered at each school.[1] Kindergarten children attend school for only a half-day in either the morning or the afternoon session.

The School District provides round-trip busing to elementary school children who attend the four public schools. The Board, in May of 1980, when considering a budget for the 1980–81 school year, also allocated

sufficient funds to bus kindergarten children to and from their homes. At the July 1980 Board meeting, however, the Board decided not to utilize the allocated funds for round-trip busing, but, rather, to allow kindergarten students to ride to school on the regular elementary school buses for the morning session or to ride home on the elementary buses at the close of the school day. This decision meant that the School District did not have to engage additional buses and drivers especially for the kindergarten children during the middle of the day. Unfortunately, it also meant that parents of kindergarten students had to assume the responsibility of transporting their children either to or from school, depending on which session their children attended.

On August 7, 1980, a number of concerned parents with kindergarten age children filed a class-action complaint in the district court against the Board and the School District's Superintendent, Michael E. Tippett. In their complaint, as amended, the parents alleged that the Board's decision effectively precluded their children from attending kindergarten because the parents were public assistance recipients and unable to afford transportation for their children.

The district court certified a class consisting of all kindergarten-age children and their parents, past, present and future, who reside within the School District and who could not afford the cost of transporting their children to or from kindergarten. The trial judge found specifically that three members of the class received public assistance and lived at least five to six miles from the nearest school.[2] He further found that the children of these particular parents

---

1. Pennsylvania law does not mandate that a school district establish a kindergarten. The decision to provide kindergarten classes is left to the discretion of each individual school board throughout the state. 24 P.S. § 5–503.

2. We note that in defining the class the district court did not impose a minimum distance requirement between the homes of class members and the nearest kindergarten. The district court's order would entitle indigent kindergar-

ten school children to free round-trip busing even if they lived directly next door to the school. Under the most favorable interpretation of state law, busing is required only for children living further than "two miles by the shortest public highway...." 24 P.S. § 13–1331. Clearly the class cannot be defined so broadly as to encompass persons that would not otherwise be entitled to a benefit under the applicable state law.

participated in a "home-bound Head Start Program" prior to being eligible for kindergarten and that a one-year disruption in the children's education before elementary school "would be harmful to the essential continuity of [their] development." App. at 347a. The district court concluded that "the interest which Plaintiffs seek to protect is of an important and fundamental nature." App. at 350a. The trial judge also believed that wealth-based discrimination is "highly suspect" and "requires a substantial justification by the governmental entity affecting such discrimination...." App. at 354a. Finding no compelling state interest for not providing free round-trip busing, the district court declared the Board in violation of the due process and equal protection clauses of the fourteenth amendment. The district court did not reach the issue of the plaintiffs' rights under state law although the judge apparently assumed pendent jurisdiction over the state law claims.

## II.

### The Constitutional Claims

A. *Due Process*

Though the trial judge and plaintiffs' counsel made broad philosophical reference to the "important and fundamental nature" of education, it must be made clear that we are not here, as in many prior cases, confronted with either the deprivation of a recognized fundamental right or the exclusion of a suspect class. We do not have here a state-imposed system of racial segregation which deprives a constitutionally protected class of equal access to a public education. *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Nor do we have a system which denies to the school age children of illegal aliens the free public education that it provides to children who are citizens of the United States or legally admitted aliens, thereby imposing a "lifetime hardship" with the "stigma of illiteracy [that] will mark

them for the rest of their lives—by having denied them any free public education." *Plyler v. Doe*, —— U.S. ——, ——, 102 S.Ct. 2382, 2398, 72 L.Ed.2d 786 (1982). Rather, we are dealing solely with a school board's failure to provide free round-trip bus transportation for its kindergarten pupils.

As the record indicates, any child from the first to the sixth grade in the Albert Gallatin School District is provided both free public education and, when needed, free round-trip bus transportation. Thus, the issues here are different and the factual contexts not nearly as oppressive as in the cases relied on by the trial court. Because of the factual and legal dissimilarities between this case and those cases relied on by appellees, one must be careful not to extend the precepts in prior cases beyond the limits of their inherent logic.

The trial court concluded that because the absence of free round-trip bus transportation to kindergarten denied appellees "access to rights granted to citizens by action of law, regulation or government policy," their constitutional right to due process was violated. App. at 349a. The critical definitional problem for due process purposes, however, is whether a fundamental right is at issue. The basis of the district court's conclusion that the Board violated the appellees' due process rights rests on the trial judge's mistaken conclusion that education is a fundamental right.

■ The Supreme Court in *San Antonio v. Rodriguez*, 411 U.S. 1, 37, 93 S.Ct. 1278, 1299, 36 L.Ed.2d 16 (1973),[3] has said that the arguments are "unpersuasive" to establish "that education is a fundamental right or liberty." The rationale of *San Antonio* was reaffirmed in *Plyler*, when the court held: "Nor is education a fundamental right; a state need not justify by compelling necessity every variation in the manner in which education is provided to its population." *Plyler*, —— U.S. at ——, 102 S.Ct.

---

**3.** Counsel for the appellants and the appellees conceded at oral argument that they had not brought the *San Antonio* opinion to the district

court's attention, a fact which we find incredible given the experience both parties have in the area of educational law.

at 2398. Since education is not a "fundamental right" as the trial judge believed, his premise that strict scrutiny was required must fall along with his conclusion that there was a constitutional violation of the appellees' due process rights.[4]

The appellees seek to justify the district court's analysis by arguing that the Board's decision deprived them of a state-created right which was protected by the due process clause. A state-created right can serve as the basis for a legitimate due process claim. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, the appellees do not challenge the procedures employed by the Board at the July 1980 meeting where the decision not to use funds for the round-trip busing of kindergarten children was made, and we find no evidence on this record that the Board, a duly elected body empowered to make decisions affecting the Albert Gallatin School District, violated the appellees' procedural due process rights.

In essence, what the appellees seek from this court is a substantive due process review of the Board's decision. As already noted, the Board convened a properly constituted meeting at which the appellees were accorded the process due them under the circumstances. Accepting the principle that a substantive state policy decision made by a school board following regular procedures becomes a federal issue under the due process clause because the board's decision may have been ill-advised would have the undesirable effect of constitutionalizing every decision made by state and local governmental entities. Leaving aside the viability of the substantive due process doctrine in other contexts, we will not undertake such a review in this case.

### B. *Equal Protection*

The appellees' argument under the equal protection clause suffers from the same infirmities as their due process clause analysis. The Supreme Court in *San Antonio* has conclusively rejected wealth as a suspect class and education as a fundamental right. Again, the most the appellees can seek is "the application of the traditional standard of review, which requires only that the State's system be shown to bear some rational relationship to legitimate state purposes." *San Antonio*, 411 U.S. at 40, 93 S.Ct. at 1300. The *San Antonio* and *Plyler* opinions make clear the error of applying the compelling state interest test in this case. At best the appellees would be entitled to a review of the Board's action under the rational basis standard. Clearly the Board's decision is supported by a rational basis. The decision not to employ drivers and engage buses at midday will result in a considerable saving to the school district. We cannot say that the Board's decision, in the face of limited funds, was irrational.[5]

4. If the trial judge were writing on a "clean slate" and were not bound by any controlling constitutional precedent, there would be considerable merit in his analysis. Particularly for a nation which has recently celebrated its bicentennial, there is merit to the contention that every American child is entitled to a quality public education, and that denial of access to a public education violates a fundamental right guaranteed by the Constitution. Certainly there have been many pronouncements by scholars and dicta in Supreme Court opinions that support such contentions. *Cf. Brown v. Board of Education*, 347 U.S. at 493, 74 S.Ct. at 691 in which the Court (Warren, C. J.) acknowledged that:

Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.

However, since 1973, a majority of the Justices of the Supreme Court has rejected the position that education is a fundamental right. *See, San Antonio* and *Plyler*.

5. It is appropriate to emphasize at this point that we are expressing no views on the validity of the Board's decision under state substantive law. The procedural posture of the case

We may have allocated scarce funds differently, but that is not the test. Since we have already concluded that the Board's decision is rational, the appellees' claim under the equal protection clause cannot be sustained. We will reverse the district court's order and hold that the Board's decision violates neither the due process nor equal protection clauses of the fourteenth amendment.

## III.

### The State Law Claims

■ The appellees' amended complaint alleged violations of Pennsylvania's Public School Code of 1949, 24 P.S. § 1–101, et seq., as well as the federal constitution. There is no question that the district court had the *power* to exercise pendent jurisdiction over the state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Weaver v. Marine Bank*, 683 F.2d 744 (3d Cir., 1982). The appellees' complaint alleged colorable federal constitutional claims and state law claims which arose out of a "common nucleus of operative facts." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. The difficulty with this case is that the district court did not reach the state law question, believing erroneously that the Board's action was unlawful under the federal constitution.[6] Conse-

quently, we are now faced with a case where the federal claims have been reversed on appeal and all that is left of the appellees' complaint are the undecided state law claims. We have concluded that the proper course is to remand the state law claims to the district court for it to exercise its discretion in light of the policies expressed in the *Gibbs* opinion.[7]

Because the school year is imminent, we encourage all of the parties to act expeditiously. For the convenience of the parties, we think it beneficial to express our views, given the unique posture of this case. The plaintiffs asserted a non-frivolous federal constitutional claim for the adjudication of which they were entitled to resort to a federal court. 28 U.S.C. § 1331. For two reasons it was appropriate that they should plead, as well, a pendent state law claim. First, ever since *Siler v. Louisville & N. R. Co.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909) it has been a rule of decision in the federal courts that adjudications of constitutional issues should be avoided if the same relief can be awarded on the basis of state law. Counsel had the right, and perhaps even the affirmative duty, to call such state law grounds of decision to the court's attention so as to permit compliance with the *Siler v. Louisville* rule. Second, the plaintiffs had the right to seek the adjudication of all claims growing out of the same

presents a difficult issue of pendent jurisdiction. *See* Section III, *infra*.

**6.** In *Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974), the Supreme Court observed that, "[g]iven a constitutional question over which the District Court had jurisdiction, it also had jurisdiction over the 'statutory' claim.... The latter was to be decided first and the former not reached if the statutory claim was dispositive." *Hagans* involved a complaint alleging federal constitutional and federal statutory claims. This same principle has been applied to pendent state law claims. *Siler v. Louisville & N. R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909); *Frederick L. v. Thomas*, 419 F.Supp. 960, 971 (E.D.Pa.1976), *aff'd*, 557 F.2d 373 (3d Cir. 1977).

**7.** This is not a case like *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir. 1976). In *Tully*, plaintiff shareholders sued a second group of shareholders alleging violations of the

federal securities law and New Jersey law. The district court held that the plaintiffs had standing under the federal statute and assumed pendent jurisdiction over the state claims. Our court held that the plaintiffs did not have standing to raise the federal statutory question and "[a]s a consequence, their complaint could not have withstood a motion to dismiss for failure to state a claim under F.R.Civ.P. 12(b)(6).... Since there was no substantial federal claim to which the state claims could be appended, the primary justification for the exercise of pendent jurisdiction was absent. Accordingly, the state claims should have been dismissed." 540 F.2d at 196 (citations omitted). In the case at bar, the appellees federal claims would not have been subject to summary judgment or a 12(b)(6) dismissal. We are satisfied that it would not have been an abuse of discretion for the district court to have reached and decided the state law issues had the trial judge done so initially.

nucleus of operative facts in a single lawsuit, rather than two, in the federal forum which Congress provided.

In these circumstances, the *Siler v. Louisville* rule suggested that the trial court adjudicate the state law claim before reaching the federal constitutional law claim. That was not done. Instead the trial court, without reaching the state law claim, made an erroneous decision of federal constitutional law, which we are required to reverse. At this stage in the proceeding the original *Siler v. Louisville* reason for pendent jurisdiction is no longer relevant since the constitutional law issue has been decided. There remains, however, the single lawsuit reason. Since the plaintiffs were justified in pleading the state law claim on that ground as well as the *Siler v. Louisville* ground, they should not suffer prejudice from the fact that the district court should have but did not reach it. Such prejudice might arise by virtue of the fact that a new lawsuit in a state court could not be pleaded and decided in time to benefit kindergarten enrollees in the coming school year, or from some other circumstances not known to us. Thus, we think it appropriate to remand the case to the trial court with a direction that the pendent state law claim should be dismissed unless the court finds that some prejudice to the plaintiff class would result other than the necessity for filing a state court lawsuit. The fact that some invest-

ment of time has already been made does not foreclose a district court judge from exercising discretion in favor of not hearing a pendent state claim. *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139; *Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Goldman v. First Federal Savings*, 518 F.2d 1247 (7th Cir. 1975).[8]

## IV.

For the foregoing reasons, we will reverse the district court's order entering a permanent injunction against the Albert Gallatin School District, its Board of Directors and its Superintendent. We will remand the state law question for a discretionary determination by the district court, under the guidelines set out by the Supreme Court in *Gibbs*, whether or not to dismiss the pendent state law claims.

---

8. In some respects the *Goldman* case is very similar to the present case. There the plaintiff challenged provisions of a mortgage agreement under federal regulations and state law. The complaint was in four counts with the first two alleging violations of federal law and the latter two alleging violations of Illinois law. The district court exercised pendent jurisdiction but reached the merits of the case only on the federal law. On appeal, the Seventh Circuit reversed the district court's decision. Judge Stevens, now Justice Stevens, wrote as follows:

> Our interpretation of the regulation requires dismissal of Counts I and II with prejudice. Since those counts raised a substantial federal question, the district court had pendent jurisdiction over the state law claims asserted in Counts III and IV. *Cf. Stream Pollution Control Board of the State of Indiana v. United States Steel Corp.*, 512 F.2d 1036, 1040–1041 (7th Cir. 1975). However,

the state law issues were not decided by the district judge and the parties have advised us that litigation is pending in the Illinois courts involving these very issues. Since the federal question has now been decided, and since the state issues are best resolved by the state courts, it would be inappropriate for the district court to proceed to the merits of Counts III and IV or for us to express any opinion about those counts. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Accordingly, the order of the district court entered on March 15, 1974, is reversed and the case is remanded with directions to dismiss Counts I and II with prejudice and to dismiss Counts III and IV without prejudice.

*Goldman*, 518 F.2d at 1252–53.

The *Goldman* opinion admittedly is not a direct parallel because here there is no pending action in the Pennsylvania courts.