Paula KADRMAS; Marsha Hall; Sarita Colton, a minor, by her next friend, Paula Kadrmas; Yvonne Hall, a minor, by her next friend, Marsha Hall; Howard Hall, a minor, by his next friend, Marsha Hall, Plaintiffs and Appellants,

v.

DICKINSON PUBLIC SCHOOLS; Ross Julson, in his capacity as Superintendent of the Dickinson Public Schools; Clarence Storseth, Nancy Johnson, Merry Johnston, Harold Krieg, Herb Herauf, in their capacity as members of the Dickinson School Board; Richard Rykowsky, in his capacity as Transportation Supervisor of the Dickinson Public Schools, Defendants and Appellees.

Civ. No. 11262.

Supreme Court of North Dakota.

March 26, 1987.

---

North Dakota Legal Services, Inc., New Town, and Legal Assistance of North Dakota, Inc., Bismarck, for plaintiffs and appellants; argued by Duane Houdek. Appearance by Edward B. Reinhardt, Jr.

Freed, Dynes, Reichert & Buresh, Dickinson, for defendants and appellees; argued by George T. Dynes.

ERICKSTAD, Chief Justice.

This is an appeal from a district court judgment upholding, against constitutional attack, schoolbus fees charged by the Dickinson Public Schools (the School District). We affirm.

The School District offers schoolbus transportation to and from school for elementary level students residing more than three miles from the school and for high school students residing more than four miles from the school. For students to receive such transportation their parents must sign a contract agreeing to pay a fee to defray part of the cost. Plaintiffs Paula Kadrmas and Marsha Hall have children attending elementary school in Dickinson, and both families reside approximately sixteen miles from the school. Paula and Marsha refused to sign the School District's contract for schoolbus service for the 1985–86 school year; instead, they transported their children to and from school at costs to them which, the trial court found, "greatly exceed the bus fees charged by the Dickinson District."

During the period relevant to this case approximately 13 percent of the students were receiving schoolbus transportation. The fee charged by the School District for this service was $97.00 per school year for one student and $150.00 per school year for two students. This fee generated approximately 11 percent of the School District's total cost for providing the service. Approximately 89 percent of the total cost was provided to the School District from state and local tax revenues.

The plaintiffs filed this action against the School District seeking to enjoin collection of any fee for schoolbus transportation. The district court entered a judgment dismissing the action on its merits, and from that judgment the plaintiffs have filed this appeal.

Section 15–34.2–06.1, N.D.C.C., provides a limited authorization for school districts to charge for schoolbus service:

"The school board of any school district which has not been reorganized may charge a fee for schoolbus service provided to anyone riding on buses provided by the school district.... For schoolbus service started on or after July 1, 1981, the total fees collected may not exceed an amount e.ʌal to the difference between the state transportation payment and the local school district's cost for transportation during the preceding school year...."

The plaintiffs assert that the foregoing statute unconstitutionally authorizes fee charges for schoolbus services in violation of the mandate within Art. VIII, § 2, N.D. Const., for a uniform system of free public schools:

"*Section 2.* The legislative assembly shall provide for a uniform system of free public schools throughout the state, beginning with the primary and extending through all grades up to and including schools of higher education, except that the legislative assembly may authorize tuition, fees and service charges to assist in the financing of public schools of higher education."

In *Cardiff v. Bismarck Public School District,* 263 N.W.2d 105 (N.D.1978), this court analyzed the language of Art. VIII, § 2, N.D. Const., in holding that school districts are required to provide elementary school textbooks without charge:

"We must assume that the framers of the constitution made a deliberate choice of words which reflected or expressed their thoughts. The term 'free public schools' without any other modification must necessarily mean and include those items which are essential to education.

\*   \*   \*   \*   \*   \*

"The word 'free' takes on its true and full meaning from the context in which it is used. There can be no doubt that the term means 'without charge or cost.' In the absence of any other showing we must conclude that the term was com-

monly understood by the people to mean 'without charge or cost.' Books and school supplies are a part of the education system. This is true whether we apply the necessary elements of the school's activities test or the integral part of the educational system test." 263 N.W.2d at 113.

The plaintiffs in this case urge us to construe Art. VIII, § 2, N.D. Const., to require that school districts provide transportation for students to and from school without any fee or charge to the parents for such service.

In construing a constitutional provision we must undertake to ascribe to the words used that meaning which the people understood them to have when the constitutional provision was adopted. *State ex rel. Sanstead v. Freed,* 251 N.W.2d 898 (N.D.1977). In so doing, it is appropriate to consider contemporaneous and long-standing practical interpretations of the provision by the Legislature where there has been acquiescence by the people in such interpretations. *Sanstead, supra; State ex rel. Linde v. Robinson,* 35 N.D. 417, 421–422, 160 N.W. 514, 516–517 (1916). Section 148, of our original constitution adopted in 1889, the predecessor to Art. VIII, § 2, N.D. Const., contained identical language mandating "a uniform system of free public schools." At that time there was no statutory provision requiring or authorizing school districts to provide student transportation or to compensate parents for transporting their children to and from school. Our statutory law remained silent with regard to school districts providing transportation or reimbursement for transporting students until 1903, when a law was enacted authorizing school boards to arrange and pay for student transportation under specified circumstances or when "petitioned by a majority of the district voters." 1903 N.D.Sess.Laws, Ch. 83, §§ 3, 4. Section 15–34.2–06.1, N.D.C.C., specifically authorizing a limited schoolbus service charge by nonreorganized school districts, was first enacted in 1979. 1979 N.D.Sess.Laws, Ch. 229, § 1.

The compulsory attendance law in effect in 1889, which required every parent to send school age children to a public school, exempted parents from that requirement where "no public school is taught for the time required, and within two miles by the nearest way to the home of such person within the school township." 1883 N.D. Sess.Laws, Ch. 44, § 119. Although this provision was amended occasionally, it was not until 1971 that the Legislature entirely omitted distance between one's residence and the school as a basis for exemption from the compulsory attendance requirement. 1971 N.D.Sess.Laws, Ch. 158, § 5. The compulsory attendance law was amended in 1907 to provide that the district school board, in districts with children residing beyond three miles from the school, "shall provide transportation for such children to and from school." From that time forward state law has in certain circumstances required and in other circumstances merely authorized school districts to participate in transporting or providing compensation for transporting students to and from school.

We do not believe that a detailed chronological recitation and analysis of the statutes relating to student transportation would be helpful in resolving the issue before us. Suffice it to, say that our laws on this subject demonstrate a long-standing practice of state and school district involvement in student transportation. However, our laws also clearly demonstrate that the Legislature has never required that the state or school districts assume the entire responsibility or cost of transporting students. Although state and school district involvement in providing student transportation has been significant, the obligation of transporting students to and from school has been shared by the parents or other caretakers of the children, and the people of this state have acquiesced in sharing that responsibility from the first days of statehood to the present time.[1]

Pursuant to Section 15–34.1–01, N.D. C.C., every parent, guardian, or other person having control of any educable child must "send or take such child to a public school" unless an exception applies. A substantively identical provision was in effect at the time our constitution was adopted in 1889. Revised Code 1889, § 759. Section 14–09–08, N.D.C.C., places a duty upon parents to give a child "support and education suitable to the child's circumstances," and a substantively identical provision was likewise in effect in 1889. Revised Code 1889, § 2779.

We believe the long-standing legislative practice of making student transportation a shared responsibility between school districts and parents provides some indication that the constitutional requirement of a "uniform system of free public schools" does not mandate free student transportation.

Such a conclusion is impliedly supported by this court's decision in *Seiler v. Gelhar*, 54 N.D. 245, 209 N.W. 376 (1926). The plaintiff parent in that case asserted that the constitutional mandate of a uniform system of free public schools required the school district to provide actual transportation for his child to and from school. The school district, having determined that it would be prohibitively expensive to provide actual transportation for the plaintiff's child, offered to monetarily compensate the plaintiff based upon a district approved compensation schedule. The court, while recognizing that the proffered compensation was "manifestly inadequate," rejected the plaintiff's constitutional argument:

---

1. In the book *"History of North Dakota"* Elwyn B. Robinson provides the following interesting historical perspective regarding "family" responsibility for student transportation:

   "Transportation—the conquest of distance on the vast, semiarid grassland—was the key to consolidation and hence to the improvement of rural education. Superintendent John C. West, later president of the University of North Dakota, reported that Webster School, consolidated in 1904, found a family system without remuneration to be the best way of transporting pupils: 'Horses are plentiful and where the children are too small to drive, there is always a large boy who will take care of this for his board.... When a horse is hitched up, one or two miles, more or less, makes little difference.'" (page 304)

"The maximum schedule of compensation authorized is manifestly inadequate, when measured by accepted standards of commercial values, in cases where patrons are situated like the plaintiff in this action. We think the inference is necessary, from the legislation on the subject, that the Legislature did not intend it should be obligatory upon the school board to pay every patron the actual value or cost of the service of transporting his own children to school. We think the Legislature recognized the fact that, while the public is vitally interested in the maintenance of adequate school facilities, of which all children in the state may at all times take advantage, the patron or parent, likewise, has a vital interest in obtaining an education for his child, and that such parental solicitude might be sufficient, in cases like the one at bar, where full compensation could not practically be made, to supply the incentive to transport the child which full compensation for the service, according to the ordinary standards of value, would have furnished.

\* \* \* \* \* \*

"The constitutional argument is without merit." 209 N.W. at 379.

The *Gelhar, supra,* court recognized that the Legislature, cognizant of the public interest in maintaining school facilities accessible to all children in this state, had attempted to deal with the serious problem of student transportation. The court also recognized, however, that parents have a "vital interest" in obtaining an education for their children, and the court implicitly found a corresponding parental obligation to participate in transporting their children to and from school irrespective of whether full reimbursement from the school district is forthcoming.

We have found only one jurisdiction in which an appellate court has determined whether or not free student transportation is mandated by its state constitution. In *Sutton v. Cadillac Area Public Schools,* 117 Mich.App. 38, 323 N.W.2d 582 (1982),

the Michigan Court of Appeals concluded that transportation of students to and from school is not an essential part of a system of free public education and that failure of a school district to provide free transportation does not violate the Michigan Constitution, which contains a provision substantively identical to Art. VIII, § 2, N.D. Const., requiring the Legislature to provide a system of free public schools. In 1970, prior to the *Sutton* decision, the Michigan Constitution was amended to also provide that "the legislature may provide for the transportation of students to and from any school." That provision, which has no counterpart in our state constitution, weighed in favor of the Michigan court's conclusion that its constitution allows, but does not require, free transportation. *Sutton* does demonstrate, however, that a constitutional provision requiring a system of free public schools does not necessarily encompass free transportation, and in that respect the case is helpful for interpreting our constitutional provision.

The plaintiffs assert that free student transportation must be part of a system of free public schools, because it is an essential element of the education process. No one could seriously dispute the logic of the assertion that a child must reach the schoolhouse door as a prerequisite to receiving the educational opportunity offered therein. That does not, however, mean that student transportation is an element or part of the public school system which the constitution requires the Legislature to provide free of charge. In our view transportation is not a necessary element of the educational process, and it is not an integral part of the educational system to which the constitution refers in requiring the Legislature to provide "a uniform system of free public schools." Although transportation may be an important prerequisite to accepting the educational opportunities offered in the public school system it is not part of the system. Other important prerequisites to participating in the educational opportunity offered by the public

school system might include good nutrition and proper immunizations. As in the case of school transportation, the state may wish to participate in the providing of such prerequisites, but Art. VIII, § 2, N.D. Const., does not mandate that it do so.

■ We hold that Art. VIII, § 2, N.D. Const., does not require the state or school districts to provide free transportation for students to and from school. We further hold that Section 15–34.2–06.1, N.D.C.C., which authorizes charges for schoolbus service, does not violate Art. VIII, § 2, N.D. Const.

The plaintiffs also assert on appeal that the schoolbus charges authorized under Section 15–34.2–06.1, N.D.C.C., violate their rights to equal protection under the Fourteenth Amendment to the United States Constitution and Article I, Section 22 of the North Dakota Constitution. Although not clearly enunciated, the plaintiffs apparently base their equal protection claim on two separate alleged discriminatory classifications. First, they assert that the transportation charges create a wealth classification which discriminates against poor persons. Second, they assert that the statute, by authorizing only school districts which have not been reorganized to charge a schoolbus service fee, creates a classification between reorganized and nonreorganized districts which discriminates against persons residing in the nonreorganized districts.

There are three separate standards of review for equal protection claims. The standard used in a particular case depends upon the challenged statutory classification and the right allegedly infringed. *See Johnson v. Hassett,* 217 N.W.2d 771 (N.D. 1974). If the case involves an inherently suspect classification or an infringement of a fundamental right the statute is subject to strict judicial scrutiny and will be held invalid unless it is shown that the statute promotes a compelling governmental interest and that the distinctions drawn by the classification are necessary to further its

purpose. *See State ex rel. Olson v. Maxwell,* 259 N.W.2d 621 (N.D.1977). An intermediate standard of review is utilized in those cases where "an important substantive right" is involved. *Hanson v. Williams County,* 389 N.W.2d 319 (N.D. 1986). When using the intermediate standard of review we seek to determine whether or not there is a close correspondence between the statutory classification and the legislative goals the statute was designed to achieve. *Patch v. Sebelius,* 320 N.W.2d 511 (N.D.1982). In all other cases we employ the rational basis standard of review, whereby a legislative classification will be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate government interest. *State v. Knoefler,* 279 N.W.2d 658 (N.D.1979). The rational basis test is the traditional standard for scrutinizing legislation facing equal protection attack and is most often utilized in cases involving economic and social welfare legislation. *See Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

■ In our view the challenged statute in this case is purely economic legislation which neither involves a suspect classification nor a fundamental or important substantive right which would require the strict scrutiny or intermediate standard of review. In similar equal protection challenges to legislation involving student transportation the traditional rational basis standard of review has been employed. *Shaffer v. Board of School Directors,* 687 F.2d 718 (3rd Cir.1982); *Sutton v. Cadillac Area Public Schools,* 117 Mich.App. 38, 323 N.W.2d 582 (1982); *Harrison v. Morehouse Parish School Board,* 368 So.2d 1113 (La.Ct.App.1979). We conclude that the rational basis test is the appropriate standard of review for the plaintiffs' equal protection claims in this case. Accordingly, Section 15–34.2–06.1., N.D.C.C., must be upheld unless it is patently arbitrary and fails to bear a rational relationship to any legitimate government purpose.

■ The plaintiffs assert that the schoolbus service fee authorized by the challenged statute unconstitutionally discriminates against poor or indigent persons because they are more burdened by and have a lesser ability to pay the fee than nonindigent persons. The plaintiffs do not and cannot assert in this case that the fee actually denied their children an opportunity to attend school. The parents have transported their children to and from school at a cost which they concede is substantially greater than the schoolbus fee charged by the School District. A statutory scheme under which a school district offers to provide student transportation at considerably less expense to the parent than self-transportation would entail does not constitute a deprivation which offends either federal or state equal protection rights. The denial of benefit by this legislation, if one can be found, does not constitute the type of detriment or harm against which equal protection rights are intended to protect. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Although Section 15–34.2–06.1, N.D.C.C., authorizes school districts to charge a limited fee for schoolbus service, a substantial part of the cost of that service is paid, under statutory authorization, by state and local tax revenues. We agree with the following statements of the Michigan Court of Appeals in *Sutton, supra*, in rejecting the contention that charging for schoolbus service creates a wealth classification that violates the equal protection rights of the poor:

> "Allocation of a school district's limited funds to education-related matters other than transportation is not irrational. Equal protection does not require that government choose between attacking every aspect of a problem or not attacking the problem at all.... Government does not deny equal protection by making the same grant available to persons of varying economic needs." [Citations omitted.] 323 N.W.2d at 584–585.

We conclude that the charges authorized by Section 15–34.2–06.1, N.D.C.C., are rationally related to the legitimate governmental objective of allocating limited resources and that the statute does not discriminate on the basis of wealth so as to violate federal or state equal protection rights.

■ The plaintiffs also contend that Section 15–34.2–06.1, N.D.C.C., violates their equal protection rights by treating reorganized and nonreorganized school districts differently. The statute allows only school districts which have not been reorganized to charge a fee for schoolbus service. Pursuant to Sections 15–34.2–01 and 15–34.2–03, N.D.C.C., a school district may, in its discretion, provide vehicular transportation, provide lodging payments, or provide compensation to families for transporting their children to and from school. Under those sections it is within a school board's discretion whether to avail itself of such options to furnish or compensate student transportation. However, under Section 15–27.3–10, N.D.C.C., a reorganized school district must either provide schoolbus service or compensate families for transporting their children to and from school. We believe the foregoing statutes, to the extent that they treat reorganized and nonreorganized school districts differently regarding student transportation, constitute legislation which is rationally related to a legitimate government purpose. The obvious purpose of such legislation is to encourage school district reorganization with a concomitant tax base expansion and an enhanced and more effective school system. The legislation provides incentive for the people to approve school district reorganization by alleviating parental concerns regarding the cost of student transportation in the reorganized district. We conclude that the legislation serves a legitimate government objective and that the statutory scheme is rationally related to accomplishing that objective. Accordingly, we hold that Section 15–34.2–06.1, N.D.C.C., does not violate the federal or state equal protection rights of persons residing in nonreorganized districts.

The judgment of the district court dismissing the plaintiffs' action on its merits is affirmed.

GIERKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, concurring and dissenting.

I join in Part I of the majority opinion holding that free transportation for students to and from school is not constitutionally mandated under the North Dakota Constitution. I dissent, however, from the equal protection analysis. I would hold that North Dakota Century Code § 15-34.-2-06.1 and the Dickinson School District policies, as applied to these plaintiffs, violate Article I, § 22, of the North Dakota Constitution. I would therefore reverse the judgment of the district court.

My point of departure with the majority is its reliance on *Shaffer v. Board of School Directors,* 687 F.2d 718 (3 Cir.1982); *Sutton v. Cadillac Area Public Schools,* 117 Mich.App. 38, 323 N.W.2d 582 (1982); and *Harrison v. Morehouse Parish School Board,* 368 So.2d 1113 (La.Ct.App.1979), for its conclusion that under the North Dakota Constitution, the rational basis standard of review is appropriate for a wealth-based equal protection challenge to legislation authorizing a fee to be charged for transportation and that the legislation so reviewed passes constitutional muster. These cases rest on the proposition that, under the federal Constitution, education is not a fundamental right. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). They provide little support and less guidance for holding that in North Dakota, where education is a fundamental right, one guaranteed by the North Dakota Constitution, access to that fundamental right is not important enough to be reviewed with stricter scrutiny than we review purely economic legislation.

The question before us, which the cases cited by the majority do not help us decide, is whether transportation provided by a school district is an important substantive right so as to warrant an intermediate standard of review which affords no presumption of constitutionality to the legislation authorizing a fee to be charged for this transportation.

We hold in this case that free busing is not constitutionally mandated. However, neither is a criminal appeal. Yet, an indigent criminal defendant is entitled to access to the appellate process. *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While wealth alone may not be sufficient to require strict judicial scrutiny, where wealth-based discrimination coalesces with an important individual interest, an intermediate standard of review is appropriate. *Griffin, supra; Douglas, supra; Plyler v. Dole,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). *See also State v. Carpenter,* 301 N.W.2d 106 (N.D.1980). *Griffin* and *Douglas* recognized that without an attorney or a transcript, an appeal is meaningless. So too, without access to education, the right to education is meaningless. Furthermore, unlike the right to appeal, the right to education is a fundamental right under our State Constitution. *In re G.H.,* 218 N.W.2d 441 (N.D.1974).

In *Plyler, supra,* the United States Supreme Court recognized that education plays a fundamental role in society. Under review in *Plyler* was a Texas statute limiting public education funds to citizens and aliens, resulting in local policies requiring tuition to be paid by illegal aliens. The Court employed an intermediate standard of review under which the deprivation of education would be constitutionally sound only if it furthered a substantial goal of the State. No such goals were demonstrated and so the Court found a violation of the equal protection clause under the fourteenth amendment of the United States Constitution.

In a rural state like ours, it is clear that transportation is extremely important to

education. Without transportation, some children would be literally cut off from education. I would therefore apply an intermediate level of scrutiny to the statute in question to determine whether there is a close correspondence between the statutory classification and the legislative goals the statute was designed to achieve. *Hanson v. Williams County*, 389 N.W.2d 319 (N.D. 1986).

The only goal the State can assert to support the statute and its burden on the poor is a financial goal. The objective must be that it is necessary to raise more money than is provided by taxation. However, there is evidence that the district could provide busing to the poor within its present budget without cutting other services. It is also noteworthy that athletes are bused to athletic competitions without charge. Each of us is aware of the economic recession in our State. The energy and agricultural sectors are seriously depressed. We read and hear about the need to cut back, to pull in our belts. Nonetheless, our need to conserve financial resources may not be implemented by depleting our constitutional resources. Our "concern for the preservation of [financial] resources standing alone can hardly justify the classification used in allocating those resources." *Plyler, supra*, 457 U.S. at 227, 102 S.Ct. at 2400 (citing *Graham v. Richardson*, 403 U.S. 365, 374–375, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971)).

The school district's policies in implementing NDCC § 15–34.2–06.1 are to charge the same fee to all families whose children ride the bus. No waiver of transportation fee has ever been made, nor has the fee ever been modified. There is no consideration of a family's income in setting the fee. Thus, where an indigent parent is unable to pay for transportation, she is simply out of luck. The trial court found the gross income of one plaintiff to be at or near poverty level, and the income of the second plaintiff substantially below the poverty income level. While I agree with the majority that parents share with the State the obligation to transport their children to school, both the State and the school district must recognize that some parents are financially unable to fulfill this obligation without onerous consequences. Because the statute and the policies implementing that statute exclude the plaintiffs, solely because of their indigency, from the exercise of an important right, *i.e.*, to participate in busing provided by the school district, I believe they do not operate uniformly and violate Article I, § 22 of the North Dakota Constitution. I would therefore reverse the district court judgment.

As for the majority's treatment of the nonreorganized-reorganized classification, I would decline to consider the issue because it was raised only in the reply brief. We are thus without the benefit of a responsive brief. We have often said that we do not consider constitutional issues not properly raised. I believe that principle should prevail here. We need to preserve our limited judicial resources and I would refrain from undertaking the resolution of a constitutional question raised in a reply brief. This is not the heavy artillery we have preached is necessary for constitutional questions.

I therefore concur in the first portion of the opinion. From the remainder, I respectfully dissent.

LEVINE and MESCHKE, JJ., concur.